# United States Court of Appeals
## For the First Circuit

No. 08-1135

ABDUL Q. KHAN,

Petitioner,

v.

MICHAEL B. MUKASEY, ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Selya and Howard, Circuit Judges.

David L. Yavner on brief for petitioner.
Aimee J. Frederickson, Trial Attorney, Office of Immigration
Litigation, Gregory G. Katsas, Acting Assistant Attorney General,
Civil Division, and Mary Jane Candaux, Assistant Director, U.S.
Department of Justice, Office of Immigration Litigation, on brief
for respondent.

September 10, 2008

**LYNCH**, **Chief Judge**.  Abdul Q. Khan, a native and citizen of Pakistan, petitions for review of a decision of the Board of Immigration Appeals ("BIA") denying his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").  We deny his petition.

## I.

We briefly summarize Khan's testimony before an Immigration Judge ("IJ").  Khan was raised as a Sunni Muslim in Pakistan.  While attending school, he befriended Hussein Ali Shah, a Shi'ite Muslim.  Shah introduced Khan to the Shi'ite faith, and Khan attended Shi'ite services weekly.  Khan converted to Shi'a Islam in 1994 and openly discussed his new faith with Sunnis in his hometown of Mardana.

Sunni Muslims threatened Khan with death following his conversion.  On February 16, 2001, these threats culminated in an attack in which members of a radical Sunni group fired guns at Khan and his friend.  His friend died, but Khan escaped and fled to his uncle's home.  After two or three days, he went to Lahore, Pakistan, where he stayed with a friend for several weeks before leaving for the United States.

On April 5, 2001, Khan arrived at Boston's Logan International Airport after brief stops in Singapore and London. Khan entered the United States using a passport with a false name.

He did not apply for asylum upon his arrival in the United States in 2001.

Following the September 11, 2001 terrorist attacks, Khan felt that he would be unable to obtain asylum in the United States. Therefore, Khan went to Canada in February 2002 to seek asylum. Canadian officials confiscated Khan's true Pakistani passport. Khan submitted to the IJ a photocopy of his purported Pakistani passport but failed to provide her with any official record of his entry into Canada or his Canadian asylum application.

After the Canadian government denied him asylum, Khan returned to the United States. Khan entered on June 18, 2004 and was detained at the border. The Department of Homeland Security issued Khan a Notice to Appear, charging him with removability. On November 30, 2004, Khan conceded removability at a hearing before an IJ. Khan applied for asylum, withholding of removal, and protection under the CAT on May 24, 2005.

In an oral decision on February 24, 2006, an IJ denied Khan any relief. As a threshold matter, the IJ found that Khan had not adequately established his identity because he offered only a photocopy of his purported Pakistani passport. The IJ found Khan's failure to produce reliable evidence of his identity particularly unreasonable because he had ample opportunity to obtain original documentation before the hearing.

The IJ also found Khan's testimony not credible. In particular, she noted that Khan's inability to explain the basic differences between the Sunni and Shi'ite faiths contradicted his claim that he had defended the Shi'ite faith to Sunnis in his hometown. Moreover, the IJ did not accept Khan's testimony because he failed to corroborate even easily verifiable details of his story, such as his travels between the United States and Canada.

The IJ rejected Khan's application for asylum and withholding of removal. The IJ also rejected Khan's CAT claim, noting that he had set forth no facts demonstrating that it was more likely than not he would be tortured if he returned to Pakistan.

Khan appealed to the BIA. On January 2, 2008, the BIA denied Khan any relief. The BIA did not adopt the IJ's decision and specifically declined to review the IJ's credibility determination. Instead, the BIA denied Khan's asylum application on the narrower ground that Khan had presented no corroborating evidence to the IJ as required under 8 U.S.C. § 1158(b)(1)(B)(ii).[1] The BIA summarized the deficiencies in the corroborating evidence that Khan had submitted as follows:

> We find it significant that the
> respondent did not submit a copy of the asylum

___

[1] Khan submitted new evidence to the BIA, including documents from Canada's immigration agency and a photocopy of his Pakistani national identification card. The BIA, however, refused to consider evidence submitted for the first time on appeal.

-4-

> application that he claims to have filed in Canada, particularly since he had indicated at the removal hearing that he could do so. Moreover, . . . the respondent presented no original passport or any copy thereof that was authenticated pursuant to 8 C.F.R. § 1287.6. . . . [T]he record contains no evidence of any contact on the part of the respondent with the government of Canada to support a claim that that government currently has the original passport.

(Footnote and internal citations omitted.)

The BIA also rejected Khan's withholding of removal and CAT claims because they were based on the same uncorroborated testimony. Finally, the BIA denied Khan's claim that his removal hearing before the IJ violated due process because it was conducted via televideo. Khan filed a timely petition for review with this court, but he has not pursued his due process claim here.

II.

Where, as here, the BIA issues its own opinion without adopting the IJ's findings, we review the BIA's decision and not the IJ's. Lin v. Mukasey, 521 F.3d 22, 26 (1st Cir. 2008); Georcely v. Ashcroft, 375 F.3d 45, 49 (1st Cir. 2004). In this case, the BIA reviewed the adequacy of the corroborating evidence that Khan had provided without reaching the issue of Khan's credibility. Our review, therefore, is limited to the corroboration issue, and we do not address Khan's specific contentions regarding the IJ's credibility determination.

-5-

"Our review is deferential, as the BIA's determinations 'must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Kho v. Keisler, 505 F.3d 50, 53 (1st Cir. 2007) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)). The BIA's factual findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Here, only issues of fact are involved.

To qualify for asylum, an alien must show that he is a "refugee." 8 U.S.C. § 1158(b)(1)(A). To do so, the alien must demonstrate "a well-founded fear of persecution on account of . . . religion." Id. § 1101(a)(42)(A). The alien bears the burden of establishing that he is a refugee. Id. § 1158(b)(1)(B)(i). Whether the alien has carried his burden is a question of fact, which we review deferentially under the substantial evidence standard. Ouk v. Gonzales, 464 F.3d 108, 111 (1st Cir. 2006).

For the alien to meet his burden of proof, the trier of fact can require him to produce corroborating evidence. 8 U.S.C. § 1158(b)(1)(B)(ii). Indeed, "[w]here the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." Id. Where the alien's "testimony is not

-6-

itself compelling the absence of easily obtainable corroborating documentation can be the final straw." Chhay v. Mukasey, No. 07-2202, ___ F.3d ___, 2008 WL 3573100, at *3 (1st Cir. Aug. 15, 2008); see also Melhem v. Gonzales, 500 F.3d 78, 81-82 (1st Cir. 2007). The BIA correctly recognized that a lack of corroborating evidence could be fatal to Khan's case.

The BIA's determination regarding Khan's failure to produce corroborating evidence is supported by substantial evidence. As the BIA recognized, Khan did not submit a copy of his Canadian asylum application -- or any evidence of his contacts with the Canadian government -- to the IJ. His failure to provide this basic information was particularly notable because Khan could have sought it from a friendly government, not the government of the country from which he said he was fleeing.[2] Moreover, he provided the IJ with no original or properly authenticated documentation of his identity -- a threshold issue in an asylum case, see, e.g., 8 U.S.C. § 1158(d)(5)(A)(i) ("[A]sylum cannot be granted until the identity of the applicant has been checked against all appropriate records or databases . . . ."). This omission has particular significance here because Khan had originally entered the United States in 2001 with a passport bearing a false name. The BIA

---

[2] Khan's attorney had a copy of his Canadian asylum application but chose not to submit it to the IJ, noting that it was her job "to put the best case forward."

properly determined that Khan did not carry his burden of proof on his asylum claim.

Because Khan failed to present evidence to satisfy the standard for asylum, he cannot meet the more rigorous standard for withholding of removal. See Pan v. Gonzales, 445 F.3d 60, 63 (1st Cir. 2006).

The BIA rejected Khan's CAT claim because it depended on the same uncorroborated testimony as his asylum claim. We agree with the BIA's analysis.

### III.

For the foregoing reasons, the petition is denied.