# United States Court of Appeals
## For the First Circuit

Nos. 08-1242; 08-1531

RAMMEASH RATNASINGAM,

Petitioner,

v.

ERIC H. HOLDER, JR.,[*] ATTORNEY GENERAL,

Respondent.

ON PETITIONS FOR REVIEW OF ORDERS
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Boudin and Lipez, Circuit Judges.

Visuvanathan Rudrakumaran and Law Office of V. Rudrakumaran
for petitioner.
Manuel A. Palau, Trial Attorney, Office of Immigration
Litigation, Gregory G. Katsas, Assistant Attorney General, Civil
Division, and Terri J. Scadron, Assistant Director, for respondent.

February 12, 2009

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Eric H. Holder, Jr. has been substituted for former Attorney General Michael B. Mukasey as the respondent.

**LYNCH**, **Chief Judge**.  Rammeash Ratnasingam, a native and citizen of Sri Lanka, petitions this court for review both of an order of the Board of Immigration Appeals ("BIA") denying him relief from removal and of an order denying his motion to reopen.

On January 31, 2008, the BIA affirmed the Immigration Judge's ("IJ") denial of Ratnasingam's applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"), all based on his alleged persecution as an ethnic Tamil by the majority Sinhalese ethnic group.  Ratnasingam's later motion to reopen, which argued that conditions in Sri Lanka had worsened for Tamils, was denied on April 18, 2008.  We deny the petitions for review.

## I.

When Ratnasingam attempted to enter the United States on May 4, 2007 at the airport in San Juan, Puerto Rico, immigration authorities discovered that his passport contained a fraudulent visa and detained him.  Ratnasingam admitted to purchasing the visa from an agent in Sri Lanka but claimed he had not known it was fraudulent.  The government issued a Notice to Appear on May 23, charging Ratnasingam with removability for seeking admission to the United States with a fraudulent visa and for lacking a valid entry document.  He conceded removability and applied for asylum, withholding of removal, and relief under the CAT.

At a hearing before an IJ on August 22, 2007, Ratnasingam testified that he was born in Northeastern Sri Lanka in 1977. He moved to Colombo, where he operated a video store and earned money by photographing and videotaping weddings and other functions.

Ratnasingam testified about four incidents that he said formed the basis for his fear of returning to Sri Lanka. The first occurred in May or June 2001, when three men in army uniforms accosted Ratnasingam as he returned to his shop after videotaping a wedding. The men took him to a camp, where they questioned him for three hours. They showed Ratnasingam several photographs and asked him if he had taken them or could identify the individuals in them. Ratnasingam stated that he had not taken the pictures and could not identify the subjects. The men then asked him if he or his family supported the Liberation Tamil Tigers of Eelam ("LTTE"), a Tamil separatist group. Ratnasingam denied any involvement. The men did not harm Ratnasingam and they released him the following day.

The next incident occurred four years later. In 2005, four men who identified themselves as LTTE members entered Ratnasingam's store. They told him that they wanted him to stock and rent out LTTE propaganda CDs. Ratnasingam refused. The men told him, "you are a Tamil. You must help the Tamils." After he continued to refuse, the men told Ratnasingam not to videotape any political functions. They threatened Ratnasingam that if he told

anyone what had happened, they would tell the Sri Lankan army that he was involved with the LTTE.

On April 18, 2006, Ratnasingam's brother-in-law, Mahadevan Kishorkumar was killed near an army camp, but Ratnasingam did not know why Kishorkumar was killed or who did it. Kishorkumar, who had worked in Ratnasingam's shop, had left Colombo to celebrate the Tamil New Year with family.

Finally, in February 2007, Ratnasingam began to receive anonymous telephone calls demanding money and threatening that he would be killed if he contacted the police. Ratnasingam had seen news reports of individuals, all Tamils, who had disappeared and who later turned up dead. No person ever approached him, however, and he never discovered who made the calls or their reason. Ratnasingam did not contact the police because he believed that they would not help him.

Ratnasingam left Sri Lanka on April 14, 2007. Though he traveled through five or six countries before arriving in Puerto Rico several weeks later, Ratnasingam did not seek asylum in any of these countries.

The IJ's oral decision, dated September 27, 2007, concluded that the incidents to which Ratnasingam testified did not amount to persecution. Ratnasingam was never physically harmed in any of the incidents he described. The motive for the murder of Kishorkumar was unknown. The IJ found Ratnasingam had not

-4-

established a pattern or practice of persecution of Tamils in Sri Lanka, stating that even though there was "evidence in the record that Tamils are persecuted," Ratnasingam had "failed to identify a persecutor [or] persecution as contemplated by case law," and rejected the CAT claim because he provided no evidence of torture. The IJ did not reach the issue of whether Ratnasingam was credible.

The BIA affirmed on January 31, 2008, holding that Ratnasingam's past experiences did not amount to persecution on account of one of the protected grounds, and that Ratnasingam had failed to establish a pattern or practice of persecution. It affirmed the IJ's denial of Ratnasingam's CAT claim, concluding that there was nothing in the record to establish a probability of torture.

The BIA denied Ratnasingam's later motion to reopen, concluding that the purported "new" evidence Ratnasingam provided was not unavailable at the prior hearing, but merely "reiterated his previous claim," and the claims lacked merit. His claim that he would face persecution as a failed asylum seeker constituted a change in personal circumstances not a change in country conditions, and he could not establish persecution on the basis of membership in either of two purported social groups -- failed asylum seekers or young male Tamils -- neither of which constituted a social group under the Immigration and Nationality Act.

Ratnasingam filed separate petitions for review of the BIA's orders, which this court consolidated.[1]

## II.

Where the BIA has issued its own opinion without adopting the IJ's findings, we review the BIA's decision. Lin v. Mukasey, 521 F.3d 22, 26 (1st Cir. 2008).

Ratnasingam incorrectly argues that our review is de novo. Whether an applicant has met his or her burden for proving eligibility is a question of fact, reviewed under the substantial evidence standard. Khan v. Mukasey, 541 F.3d 55, 58 (1st Cir. 2008); see also Budiono v. Mukasey, 548 F.3d 44, 48 (1st Cir. 2008). We uphold the BIA's findings "if they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole,'" Budiono, 548 F.3d at 48 (quoting Sharari v. Gonzales, 407 F.3d 467, 473 (1st Cir. 2005)), and will "reverse only if 'any reasonable adjudicator would be compelled to conclude to the contrary,'" id. (quoting 8 U.S.C. § 1252(b)(4)(B)).

An applicant for asylum bears the burden of demonstrating that he or she "suffered past persecution or has a well-founded fear of future persecution based on one of five enumerated grounds." Chikkeur v. Mukasey, 514 F.3d 1381, 1382 (1st Cir.

---

[1] Ratnasingam also filed a motion for a stay of removal. This court denied the motion on March 25, 2008, concluding that he was not likely to succeed on the merits. See Arevalo v. Ashcroft, 344 F.3d 1, 7-9 (1st Cir. 2003).

2008); see 8 U.S.C. § 1101(a)(42)(A) (defining "refugee" as one who suffers persecution on the basis of "race, religion, nationality, membership in a particular social group, or political opinion"). The REAL ID Act, which applies to asylum applications filed after May 11, 2005 such as Ratnasingam's, additionally requires that the applicant show that one of the statutory factors "was or will be at least one central reason for persecuting the applicant." See id. § 1158(b)(1)(B)(i), as amended by Pub. L. No. 109-13, § 101(a), 119 Stat. 231, 302-03 (2005).

The record simply does not compel the conclusion that Ratnasingam "was subjected to systematic maltreatment rising to the level of persecution, as opposed to a series of isolated incidents." Topalli v. Gonzales, 417 F.3d 128, 132 (1st Cir. 2005) (affirming denial of asylum to applicant who had been arrested and beaten seven times in his home country). His encounters with the Sri Lankan army in 2001 and the LTTE in 2005 are insufficient. Experiences that do not "rise above unpleasantness, harassment, and even basic suffering" are not persecution. Khalil v. Ashcroft, 337 F.3d 50, 55 (1st Cir. 2003) (quoting Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000)). Ratnasingam was detained once by the army and released without being harmed. He was accosted in his store once by LTTE members and was again physically unharmed. Although he was threatened after each incident, he never saw any of the men again. See Ravindran v. INS, 976 F.2d 754, 759 (1st Cir. 1992)

-7-

(holding that substantial evidence supported the denial of asylum to a Tamil Sri Lankan in part because he remained in the country without incident for one year after the alleged persecution). Further, he never reported any encounters with LTTE or army personnel in the years he remained in Sri Lanka.

The requirement that one of the statutory factors be a "central reason for persecuting the applicant" means Ratnasingam cannot establish past persecution on the basis of Kishorkumar's murder (for unknown reasons) or the anonymous telephone calls. Nothing in the record compels the conclusion that the anonymous caller targeted Ratnasingam "for anything other than economic motives." Chikkeur, 514 F.3d at 1383. Similarly, the record does not compel a finding that Kishorkumar's killers acted on account of one of the statutory grounds; it is completely silent on their motive. "Because the motive for the persecution is critical, a petitioner 'must provide some evidence of it, direct or circumstantial.'" Khalil, 337 F.3d at 55 (emphasis added) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 483 (1992)).

Ratnasingam also failed to establish a pattern or practice of persecution. A petitioner that does not provide evidence that he or she will be singled out for persecution may still qualify for asylum by establishing that there is a "pattern or practice in his or her country . . . of persecution of a group of persons similarly situated to the applicant on account of" the

statutory grounds.  8 C.F.R. § 1208.13(b)(2)(iii)(A).  Ratnasingam argues that because the IJ made findings that "he is a Tamil" and that "there is evidence in the record that Tamils are persecuted," the IJ and the BIA erred in denying him asylum.  The IJ did not, however, find there was a pattern or practice of persecution, but rather that his evidence failed to establish any such pattern.

The BIA committed no error in affirming this determination.  "That a group suffers due to violent civil conflict . . . in the home country does not suffice to establish a pattern or practice" of persecution.  Kho v. Keisler, 505 F.3d 50, 54 (1st Cir. 2007) (quoting Mequenine v. INS, 139 F.3d 25, 28 (1st Cir. 1998)); see also Velasquez-Valencia v. INS, 244 F.3d 48, 51 (1st Cir. 2001) ("Congress has chosen to define asylum as limited to certain categories; . . . it has not generally opened the doors to those merely fleeing from civil war.").  Moreover, in Ravindran, a case that involved an asylum claim by a Sri Lankan Tamil, this court noted that "evidence of widespread violence and human rights violations affecting all citizens is insufficient to establish persecution."  Ravindran, 976 F.2d at 759.

Because Ratnasingam "cannot meet the lower burden of proof for establishing his eligibility for asylum, he therefore cannot satisfy the more stringent standard for withholding of removal."  Sinurat v. Mukasey, 537 F.3d 59, 62 (1st Cir. 2008).

As to the CAT claim, Ratnasingam argues that, regardless of his failure to prove or provide any evidence of past torture, it is more likely than not that he will be tortured if returned, based on country conditions, the facts that "his photograph was taken by the Sri Lankan authorities in 2001, . . . [that] he is returning from a foreign country, . . . [and that] he is a failed asylum seeker," and a report that an LTTE member who was returned in October 2003 was tortured. The record does not compel a conclusion that it is more likely than not that Ratnasingam, who was never an LTTE member, would be tortured if returned. His claim is wholly speculative. See Chhay v. Mukasey, 540 F.3d 1, 7 (1st Cir. 2008).

## III.

The BIA also did not abuse its discretion in denying Ratnasingam's motion to reopen. See Zeru v. Gonzales, 503 F.3d 59, 71 (1st Cir. 2007). Motions to reopen deportation proceedings are disfavored due to the strong public interest in concluding litigation. Id.

A motion to reopen deportation proceedings must state "the new facts that will be proven . . . if the motion is granted" and must demonstrate that "evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1).

Ratnasingam failed to state any new, material facts.[2] The documentary evidence that he submitted, including the 2008 State Department country report, did not demonstrate intensified persecution but mirrored evidence submitted in support of his original application.

The BIA did not abuse its discretion in concluding that his status as a failed asylum seeker constituted changed personal circumstances rather than changed country conditions, or in finding the claim was not new, having been made to the IJ.

Ratnasingam incorrectly argues that the BIA applied the wrong legal standard to his motion to reopen and that his burden was merely to demonstrate prima facie eligibility for relief. Prima facie eligibility for relief is only one of the two threshold requirements for a motion to reopen. Fesseha v. Ashcroft, 333 F.3d 13, 20 (1st Cir. 2003). Ratnasingam's failure to establish that he met the second threshold -- that of introducing previously unavailable, material evidence -- dooms his claim.

IV.

The petitions for review are denied.

---

[2] Because the BIA supportably denied Ratnasingam's motion on these grounds, we need not address its separate conclusion that Ratnasingam failed to establish that "failed asylum seekers" or "young male Tamils" constituted social groups within the meaning of the Immigration and Nationality Act.