# United States Court of Appeals
## For the First Circuit

No. 08-1494

SRISHANKAR BALACHANDRAN,

Petitioner,

v.

ERIC H. HOLDER, JR.,[*] ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Selya and Stahl, Circuit Judges.

Visuvanathan Rudrakumaran and Law Office of Visuvanathan Rudrakumaran on brief for petitioner.
Terri J. Scadron, Assistant Director, Office of Immigration Litigation, and Gregory G. Katsas, Assistant Attorney General, Civil Division, on brief for respondent.

May 22, 2009

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Eric H. Holder, Jr. has been substituted for former Attorney General Michael B. Mukasey as the respondent.

**LYNCH**, **Chief Judge**.  Srishankar Balachandran, of Sri Lanka, petitions for review of a Board of Immigration Appeals ("BIA") order denying his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

The BIA affirmed the finding of an Immigration Judge ("IJ") that Balachandran did not qualify for relief because he failed to establish he had been persecuted in Sri Lanka or faced future persecution.  The IJ found that Balachandran was neither credible nor had he corroborated his testimony from easily obtainable sources.  See REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231.  The IJ also found that Balachandran's claims of persecution did not single him out from the general population, which suffered from civil strife in the country brought about by a "rampant terrorist organization," a separatist group called the Tamil Tigers.  Further, the IJ determined that even if she had found Balachandran credible on his asylum claims she would, as a matter of discretion, have denied him asylum because Balachandran came before the immigration court with unclean hands.

The BIA affirmed and noted Balachandran had made no effort to establish persecution of him individually separate from the widespread civil strife between the government and the Tamil Tigers, which has, sadly, affected all Sri Lankans.  See generally Ratnasingam v. Holder, 556 F.3d 10 (1st Cir. 2009).  The primary

-2-

argument made by the petition is that the IJ and BIA overlooked petitioner's pattern-or-practice claim under 8 C.F.R. § 1208.13(b)(2) and so the case must be remanded. The premise of the argument is wrong, and there is strong support in the record for the denial of relief. We deny Balachandran's petition for review.

I.

Immigration authorities detained Balachandran on September 22, 2006, when he presented himself for inspection at the airport in St. Thomas, U.S. Virgin Islands, intending to travel to the mainland United States on his way to Canada. He had entered the U.S. Virgin Islands two days earlier and was traveling under an assumed name and with fraudulent Canadian identification documents. He did not then claim asylum, and he refused to answer questions about whether he feared going back to Sri Lanka.

The government served Balachandran with a Notice to Appear on September 22, 2006, charging him with removability. Balachandran, represented by counsel, completed an asylum application. The IJ had granted his counsel two continuances to allow him more time to prepare the application.

Balachandran's counsel failed to appear for the hearing and Balachandran, after obtaining another continuance, elected to proceed pro se. At his hearing, he testified that he was born in

Sri Lanka in 1981 and is a member of the minority Tamil ethnic group.

Balachandran described three incidents that made him fear returning to Sri Lanka. On April 10, 2004, twenty members of the Sri Lankan army entered his house, shouting "Koddiya" ("Tigers" in the language of the majority Sinhalese ethnic group). They assaulted Balachandran, as well as his father and sister, and detained him. He was transported to an army camp where he was beaten and mistreated for several months. He was released after his father bribed an official. On December 24, 2004, Balachandran was arrested along with several other young Tamils. After an informant identified him as a Tiger, soldiers beat him, mistreated him, and held him for two months. His father again secured his release by paying a bribe. Finally, on January 3, 2006, members of the army arrested Balachandran at his house after a bomb exploded nearby. They accused him of being a Tiger, beat him, and detained him until his father paid another bribe. He was hospitalized for one week after his release. Balachandran left Sri Lanka on August 20, 2006. He traveled through several countries before arriving in the Virgin Islands but did not seek asylum until he was detained.

Balachandran testified that he had not communicated with his father and sister since arriving in the United States. He had, however, been in contact with family in Canada who were able to contact his father and sister. He said that he spoke with his

-4-

Canadian relatives "once a week or once a month" and that they had helped him to obtain from Sri Lanka his birth certificate and identification papers, which he submitted with his application.

The IJ denied Balachandran's application. She found Balachandran not credible. The IJ also noted that it was clear that it was never Balachandran's intention to come to the United States to seek protection. She also concluded that Balachandran had failed to corroborate his testimony in any way. He did not provide affidavits from his family in Canada, who he testified knew of what had happened to him in Sri Lanka, hospitalization records, or any other documentation. The IJ concluded that Balachandran had failed to establish a likelihood of persecution distinct from the experience of other Sri Lankans and could not qualify for asylum or withholding on the basis of conditions of general civil strife in the country. CAT relief was also denied on grounds of lack of credibility.

The BIA affirmed. It held that the respondent failed to provide reasonably available corroborating evidence and failed to establish persecution on account of a statutorily protected ground. It also noted that because Balachandran's asylum claim was based on "general conditions of violence" in Sri Lanka, he was not entitled to refugee status. Finally, the BIA held that the record supported the denial of the application for protection under the CAT because

Balachandran failed to establish a likelihood he would be tortured with government acquiescence.

                              II.

     Where the BIA has issued its own opinion, we primarily review the BIA's decision.

A.        The Purported Pattern-or-Practice Claim

     We address first Balachandran's procedural argument that the BIA erred in failing to address his theory that he qualified for relief on the basis of a pattern or practice of persecution in Sri Lanka.

     A petitioner who, like Balachandran, fails to establish that he or she will be singled out for persecution may nevertheless qualify for asylum by demonstrating that there is a "pattern or practice in his or her country . . . of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 1208.13(b)(2)(iii)(A). The pattern-or-practice theory requires the applicant to "present evidence of 'systematic persecution' of a group," and to demonstrate that "persecutors target the group specifically on account of one of the five statutory grounds." Kho v. Keisler, 505 F.3d 50, 54 (1st Cir. 2007) (quoting Mequenine v. INS, 139 F.3d 25, 28 (1st Cir. 1998)).

Balachandran's brief to the BIA contained only a cursory argument on the pattern-or-practice issue. Balachandran did not identify a specific group that was the subject of the alleged pattern or practice of persecution, presented no evidence of "systematic persecution," and failed even to identify which statutory ground would have been the basis of persecution. Balachandran only reproduced portions of the hearing transcript and asserted he was eligible for asylum under a pattern-or-practice theory. Assuming Balachandran did not waive the claim, it is controlled by our decisions in Ravindran v. INS, 976 F.2d 754 (1st Cir. 1992), and Ratnasingam.

We may affirm where the agency has implicitly addressed a claim, as here. See Un v. Gonzales, 415 F.3d 205, 209 (1st Cir. 2005) ("[W]e expect an agency to make findings, implicitly if not explicitly, on all grounds necessary for decision."). That is especially so where the arguments made on the point to the agency are far from clear. Here, the BIA noted it is "well-settled that aliens whose asylum claims are based on the general conditions of violence in a country are not entitled to 'refugee' status," implicitly holding that Balachandran failed to show a pattern or practice of persecution based on statutorily protected grounds rather than only hardship resulting from conditions of civil strife. In Ratnasingam, we affirmed the BIA's rejection of a pattern-or-practice claim by a Tamil Sri Lankan on identical

grounds. We held that a pattern-or-practice claim cannot be based on a group's suffering due to "violent civil conflict . . . in the home country." Ratnasingam, 556 F.3d at 14 (omission in original) (quoting Kho, 505 F.3d at 54); see also Ravindran, 976 F.2d at 759.[1]

B.          Asylum and Other Claims for Relief: Credibility Determination

Whether Balachandran has met his burden of proving eligibility for relief is a question of fact, which we review under the substantial evidence standard. Ratnasingam, 556 F.3d at 13. We will reverse the BIA's findings "only if 'any reasonable adjudicator would be compelled to conclude to the contrary.'" Budiono v. Mukasey, 548 F.3d 44, 48 (1st Cir. 2008) (quoting 8 U.S.C. § 1252(b)(4)(B)). The substantial evidence standard also applies to the BIA's determination regarding the availability of corroborating evidence and the effect of non-production. Chhay v. Mukasey, 540 F.3d 1, 6 (1st Cir. 2008).

Balachandran argues that the BIA erred in upholding the IJ's conclusion that he failed to provide adequate corroboration. The REAL ID Act provides that an IJ can require corroboration, even

---

[1]     Balachandran filed a Rule 28(j) letter with this court urging remand to the BIA. See Fed. R. App. P. 28(j). He noted that the government filed a motion to remand in the 11th Circuit where the BIA had failed to address a pattern-or-practice theory in any way. See Vijayaratnam v. Holder, No. 09-10275 (11th Cir. Apr. 21, 2009). Here, the BIA considered and rejected Balachandran's arguments. Vijayaratnam is not relevant.

if a petitioner gives credible testimony, and that "such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." REAL ID Act § 101(a)(3), 119 Stat. at 303 (codified at 8 U.S.C. § 1158(b)(1)(B)(ii)).

The IJ said she was "not expecting somebody from Sri Lanka to send a letter" and correctly noted that it was reasonable to expect Balachandran to secure corroboration from his family in Canada. Balachandran testified that he was in contact with his Canadian relatives (in fact, they helped to arrange for his initial lawyer) and that they were aware of what had happened to him in Sri Lanka. He also testified that they communicated with his Sri Lankan family through a telephone owned by neighbors in Sri Lanka. Balachandran was represented by counsel while he obtained documentation in support of his asylum application, and he obtained two continuances from the IJ to enable him to prepare his application. He submitted official documents from Sri Lanka, showing both that he was able to obtain corroborating items from his relatives and that he was aware of the need to provide documentation in support of his application.[2]

---

[2] Balachandran also argues that the BIA erred in finding no connection between the government's treatment of him and a protected ground, namely imputed political opinion. See 8 U.S.C. § 1101(a)(42)(A). We need not reach this issue. Balachandran based his asylum claim solely on his testimony, and the BIA supportably found he failed to provide adequate corroboration.

Finally, Balachandran challenges the BIA's determination that he did not qualify for protection under the CAT.[3]  He argues the BIA erred in finding that the Sri Lankan government did not acquiesce in the torture.  The BIA did not base its conclusion on the lack of governmental acquiescence in torture; rather, it held that Balachandran had failed to establish a likelihood of his being tortured with government acquiescence as is required for CAT protection.  See 8 C.F.R. §§ 1208.16(c), 1208.18(a)(1).

The BIA's conclusion is supported by substantial evidence.  Although Balachandran provided documentary evidence regarding general country conditions, Balachandran's CAT claim was, like his asylum claim, based primarily on his uncorroborated testimony and not credible.  The record does not compel the conclusion that it is more likely than not he would be tortured if returned to Sri Lanka.  See Khan v. Mukasey, 541 F.3d 55, 58 (1st Cir. 2008) (upholding denial of CAT claim where claim depended on the same uncorroborated testimony underlying asylum claim); see also Ratnasingam, 556 F.3d at 15 (upholding denial of CAT claim, based in part on country conditions, by Sri Lankan Tamil).

The petition for review is denied.

---

[3]     Balachandran makes no argument regarding the BIA's denial of his claim for withholding of removal; the argument is waived. See Scatambuli v. Holder, 558 F.3d 53, 61 (1st Cir. 2009).

-10-