# United States Court of Appeals
## For the First Circuit

Nos. 08-1398, 08-1740

PRABAKARAN RASIAH,

Petitioner,

v.

ERIC H. HOLDER, JR.,<sup>*</sup> ATTORNEY GENERAL,

Respondent.

ON PETITIONS FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before
Lynch, Chief Judge,
Boudin and Lipez, Circuit Judges.

Visuvanathan Rudrakumaran, Law Office of Visuvanathan
Rudrakumaran, on brief for petitioner.
Anthony W. Norwood, Senior Litigation Counsel, Office of
Immigration Litigation, Gregory G. Katsas, Assistant Attorney
General, Civil Division, and Terri J. Scadron, Assistant Director,
Office of Immigration Litigation, on brief for respondent.

December 9, 2009

<sup>*</sup>Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Eric H.
Holder, Jr. has been substituted for former Attorney General Michael
B. Mukasey as the respondent.

**BOUDIN**, <u>Circuit Judge</u>. Prabakaran Rasiah is an ethnically Tamil Sri Lankan citizen. He seeks review of a decision by the Board of Immigration Appeals ("BIA") affirming an order by an Immigration Judge ("IJ") that denied his applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Rasiah sought this relief alleging that he had suffered persecution at the hands of the Sri Lankan army because of his Tamil ethnicity. The background events and proceedings can be briefly summarized.

Rasiah sought to enter the United States on May 4, 2007, in San Juan, Puerto Rico, using a fraudulent non-immigrant visa. Federal authorities began removal proceedings, and Rasiah conceded removability, but applied for asylum, withholding of removal, and CAT relief. Rasiah had an interview with an asylum officer on May 23, 2007, and was granted a hearing before an IJ. The hearing before the IJ occurred on August 22, 2007, and Rasiah was represented by counsel.

Rasiah was the only witness. He testified that he is an ethnically Tamil Sri Lankan and to a number of incidents of past persecution he and family members allegedly suffered at the hands of the Sri Lankan army or others associated with the government: that soldiers beat him and shot his brother and sister; that he had left his job after soldiers inquired into his support for the Tamil Tigers, a rebel group engaged in a long-running armed conflict with the Sri Lankan government; that he was kidnapped, beaten and burned

-2-

by three men dressed as civilians; and that soldiers shot an alleged relative of his named Kandasamy Gowrivalan.

Rasiah submitted a variety of documents on the current conditions in Sri Lanka, including a United Nations report and articles from newspapers and online sources.  Consistent with State Department country reports on Sri Lanka, the materials confirmed that Tamils were sometimes threatened, abused and worse on account of their ethnic status or suspected ties to the Tamil Tigers.  After the hearing, Rasiah submitted a memorandum of law reiterating his past persecution claims and claiming, for the first time, asylum eligibility based on a pattern or practice of persecution against Tamils.

The IJ issued an oral decision on October 3, 2007, that denied Rasiah's application for asylum, withholding of removal, and CAT relief.  The IJ found Rasiah's testimony of past persecution of himself and his family "not credible," saying she did not believe him; the reasons she gave can be summarized as follows:

> that he had failed to provide corroboration for his stories, such as his claims that his brother and sister were shot;
>
> that several other Sri Lankan asylum seekers claimed Gowrivalan was a relative and had presented death certificates like the one Rasiah presented in support;
>
> that his claim he would be persecuted in Sri Lanka was undercut by his ability to get a passport from the Sri Lankan government and his experiencing no difficulties when

traveling to or from Sri Lanka in the past; and

that there were inconsistencies in his testimony, including about the facts of the alleged kidnapping and his job.

The IJ also found that Rasiah had not met his burden on future persecution.

Rasiah appealed to the BIA where he challenged the IJ's adverse credibility finding as to his past persecution; argued that he had proved a pattern or practice of persecution of Tamils that the IJ had ignored; and (for the first time) argued that he would be persecuted in Sri Lanka as a failed asylum seeker. The BIA upheld the finding that Rasiah's accounts of past persecution were incredible, addressed Rasiah's pattern or practice claim by quoting the IJ's conclusion that simply by being a Tamil Rasiah was not entitled to "a blank check in order to receive asylum," and held that his claim that he would be persecuted as a failed asylum seeker was never presented to the IJ and so was forfeited.

Rasiah sought review in this court on March 27, 2008, and then on April 3, 2008, filed a motion to reopen the administrative proceedings, claiming that the persecution of Tamils had increased in Sri Lanka and submitting additional documentary evidence of conditions in Sri Lanka. He also argued that his pattern or practice claim turned not on his credibility, but rather on his Tamil ethnicity and objective evidence of the treatment of Tamils. The BIA denied the motion to reopen, observing that the new information did

not "ameliorate[] the factual bases of the adverse credibility finding."

Rasiah petitioned to review this denial of the motion to reopen, which we consolidated with his earlier petition contesting the BIA's decision on the merits. In this court, Rasiah does not challenge the IJ's factual finding that his testimony about past persecution was incredible. His main argument is that the BIA erred in failing to analyze separately his pattern or practice claim and in failing to remand that issue to the IJ for development. He also argues that the BIA should have decoded his claim that he would be subject to persecution as a failed asylum seeker.

Review of the IJ or BIA's fact-bound determinations is under the "substantial evidence standard," Ratnasingam v. Holder, 556 F.3d 10, 13 (1st Cir. 2009), which asks whether "any reasonable adjudicator would be compelled to conclude to the contrary," Budiono v. Mukasey, 548 F.3d 44, 48 (1st Cir. 2008) (internal quotation marks omitted). But, as already noted, Rasiah does not dispute the finding that his testimony was incredible and his main objection is to BIA's alleged failure to decide on the merits his pattern or practice claim. However, the BIA--although more cryptic than the IJ--did permissibly resolve Rasiah's claim.

Claims based on past persecution, reasonable fear of future persecution or both ordinarily focus on past incidents or future danger involving the asylum seeker or his family, which must

be severe enough to constitute "persecution"--a fairly high standard, Nelson v. INS, 232 F.3d 258, 263-64 (1st Cir. 2000); the applicant must also show that the persecution that occurred, or is threatened, was "on account of race, religion, nationality, membership in a particular social group, or political opinion," 8 U.S.C. § 1101(a)(42)(A) (2006); 8 C.F.R. § 208.13(b) (2009). A showing of past persecution creates a rebuttable presumption of future persecution. 8 C.F.R. § 208.13(b)(1).

An applicant can often reinforce his claim of individualized harm or danger by showing that persecution of similarly situated persons has occurred. See Kotasz v. INS, 31 F.3d 847, 852-54 (9th Cir. 1994). Thus, a history of violence toward Tamils could help show that violence directed against Rasiah or his family was based on their ethnicity rather than random crime or disorder or that the source was the government or its indifference. Such a showing could also make more credible and rational the fear of the asylum seeker that past incidents would be repeated.

In fact, there is evidence, reflected in both case law and State Department country reports, that ethnic Tamils in Sri Lanka have been subject to incidents of violence in the past attributed to the government or its indifference.[1] As described by the State

---

[1]See, e.g., U.S. Dep't of State, 2008 Country Reports on Human Rights Practices: Sri Lanka (released Feb. 25, 2009); Krishnapillai v. Holder, 563 F.3d 606, 609, 611-13, 620-21 (7th Cir. 2009); Balasubramanrim v. INS, 143 F.3d 157, 158-59 (3d Cir. 1998); Ravindran v. INS, 976 F.2d 754, 756 (1st Cir. 1992).

Department's 2008 report, "[t]he government has been engaged in a twenty-five year armed conflict with the" Tamil Tigers, which the report describes as a "terrorist organization" controlling "a shrinking area in the north of the country." As this conflict escalated, "the government's respect for human rights declined," and Tamils made up "the overwhelming majority of victims of human rights violations."[2]

The 2008 report described "frequent harassment of young and middle-aged Tamil men by security forces and paramilitary groups" especially "in the conflict-affected north and east"; among the more serious violations from 2008 noted in the report were approximately 800 civilian casualties, more than 500 disappearances and the detention of several thousand individuals (although the majority were released within 24 hours). So clearly many Tamils--particularly in conflict-afflicted areas--have suffered substantial hardships.

The difficulty for Rasiah is that simply because civil strife causes substantial hardships for an ethnic minority, that does not automatically entitle all members of that minority to asylum. Ratnasingam, 556 F.3d at 14; Kho v. Keisler, 505 F.3d 50, 54 (1st Cir. 2007); see also Krishnapillai, 563 F.3d at 620. The governing regulations and the case law do in some extreme cases allow relief

---

[2]In May 2009, the Sri Lankan government declared victory over the Tigers in the conflict, Vakeesan v. Holder, No. 08-3622, 2009 WL 2591034, at *11, n.6 (6th Cir. Aug. 21, 2009) (citing Sri Lanka Says Leader of Rebels Has Died, N.Y. Times, May 18, 2009, at A4), so the situation of Tamils may have changed in recent months.

for asylum seekers solely based on their membership in a protected group under the pattern or practice rubric, 8 C.F.R. §§ 208.13(b)(2)(ii), 208.16(b)(2); Kho, 505 F.3d at 54; however, the standard is demanding and in substance requires a showing of regular and widespread persecution creating a reasonable likelihood of persecution of all persons in the group, see Krishnapillai, 563 F.3d at 620; Kotasz, 31 F.3d at 852.

Attempts by Tamils to meet this standard have been regularly rejected. This circuit has recently sustained BIA findings that treatment of Tamils in Sri Lanka does not rise to the level necessary to establish a pattern or practice claim that standing alone permits relief. Balachandran v. Holder, 566 F.3d 269, 272-73 (1st Cir. 2009); Ratnasingam, 556 F.3d at 14-15. Other circuits are in accord. Krishnapillai, 563 F.3d at 620; Vakeesan, 2009 WL 2591034, at *11; Paramanathan v. U.S. Att'y Gen., No. 08-13916, 2009 WL 2477762, at *4-5 (11th Cir. Aug. 14, 2009) (per curiam).

The record in this case neither compels a contrary finding nor supports Rasiah's assertion that his claim was ignored. Rasiah himself raised his pattern or practice claim only after his hearing before the IJ, but the IJ dealt with it exactly as one might expect:

> Even though the Country Reports and background information provided by the respondent clearly depicted that Sri Lanka is a country in turmoil, that there [are] abuses from the government, there [are] abuses from the army, there [are] abuses from the Tigers, the respondent, by the fact that he is a Tamil, by the fact he is from Sri Lanka, that does not

> give him a blank check in order to receive
> asylum in the United States.

The BIA cited this portion of the IJ's decision in a footnote, effectively adopting the IJ's treatment, which was itself adequate in light of the nature of the claim and the case law.

The IJ's explicit references to "the Country Reports" and other "background information" and its discussion of conditions in Sri Lanka indicate that the IJ and, in turn, the BIA considered but rejected Rasiah's pattern or practice claim, see Malek v. Mukasey, 274 F. App'x 1, 7-8 (1st Cir. 2008), and Rasiah presented no evidence to distinguish his purported pattern or practice claim from those rejected in Balachandran and Ratnasingam. The treatment of Tamils, however deplorable, is not of a reach that entitles every Tamil in Sri Lanka to asylum based on ethnicity alone.

What Rasiah needed was evidence that he himself had been persecuted or targeted for persecution. With that foundation, he might well have benefitted (in ways described above) from a showing based on country reports or other generalized evidence that Tamils were sometimes persecuted because of their political activities or even their ethnicity alone. But because the IJ disbelieved broadly Rasiah's claims of personal or family persecution--and he does not contest that finding in this court--he has no past persecution or threats of future persecution of him or family members that might gain weight or color from the treatment of others.

An adverse credibility finding by itself would not automatically doom a claim for asylum. For example, an applicant might be disbelieved as to past episodes of persecution while his own (or independent) evidence might show that he faced threats of future persecution--for example, direct threats from government forces--that established both his genuine belief and an objective likelihood that he would be persecuted. Paul v. Gonzalez, 444 F.3d 148, 154 (2d Cir. 2006). But Rasiah made no such independent showing: the only evidence of harm or threats to him or his family that he offered was the evidence that the IJ disbelieved and there was no evidence of a pattern or practice of persecution of Tamils beyond that our case law already has rejected as insufficient.

The BIA also did not err in denying Rasiah's motion to reopen the proceedings. Motions to reopen are disfavored and are reviewed only for abuse of discretion. Lemus v. Gonzalez, 489 F.3d 399, 401 (1st Cir. 2007). Rasiah provided no new evidence as to why he should be believed, see id., and did not show that country conditions had worsened dramatically, see Ratnasingam, 556 F.3d at 15. What he offered was far from the necessary showing of "new evidence [that] establishes a prima facie case for the underlying substantive relief." Chikkeur v. Mukasey, 514 F.3d 1381, 1383 (1st Cir. 2008).

Finally, as already noted, Rasiah contends he is entitled to asylum because he is part of the "particular social group" of

-10-

"failed asylum seekers."  The BIA held this claim barred because Rasiah failed to raise it before the IJ.  He points to nothing that shows he did raise it earlier, so the BIA was on firm ground. Kechichian v. Mukasey, 535 F.3d 15, 21-22 (1st Cir. 2008).

The petition for review is denied.


**- Dissenting Opinion Follows -**

-11-

**LIPEZ, <u>Circuit Judge</u>, dissenting.** In an effort to avoid remanding this case to the BIA, the majority constructs reasoning not present in, and indeed directly contradicted by, the BIA's decision. As I shall explain, the BIA did not consider and reject Rasiah's claim of pattern or practice persecution on the merits. Instead, on initial appeal and again on the motion to reopen, the BIA declined to address Rasiah's pattern or practice claim in view of the IJ's adverse credibility finding as to Rasiah's personal accounts of past persecution. The BIA committed a legal error by concluding that the adverse credibility finding as to past persecution doomed Rasiah's pattern or practice claim. Therefore, I respectfully dissent. This case must be remanded to the BIA so that Rasiah's properly presented pattern or practice claim may be heard in the first instance.[3]

_____

[3]The majority appears to fault Rasiah for not raising his pattern or practice claim orally at the hearing before the IJ, and instead raising this claim for the first time in a written memorandum submitted after the hearing. However, the majority fails to note that at the conclusion of Rasiah's testimony before the IJ, Rasiah's counsel asked to present oral argument. The IJ instructed counsel that "if you want to submit a closing, submit it in written form . . . ." In compliance with that instruction, Rasiah then filed a written memorandum of law in which he squarely raised his pattern or practice claim, citing to the governing regulations and the documentary evidence of country conditions he had submitted at the hearing. This memorandum was submitted prior to the IJ's issuance of her decision, and the government could easily have responded in a reply memorandum. Rasiah cannot be faulted for complying with the IJ's express instruction and presenting his argument in written form, rather than orally at the hearing.

In our review of the BIA's decision, we cannot invent grounds for affirmance and ascribe them to the agency. Instead, we must "judge the action of an administrative agency based only on reasoning provided by the agency, and not based on grounds constructed by the reviewing court." El Moraghy v. Ashcroft, 331 F.3d 195, 203 (1st Cir. 2003) (quotation marks and citation omitted) (remanding where IJ failed to state conclusions on several important issues); see also Halo v. Gonzales, 419 F.3d 15, 18-19 (1st Cir. 2005) ("[A] reviewing court . . . must judge the propriety of [administrative] action solely by the grounds invoked by the agency, and that basis must be set forth with such clarity as to be understandable." (internal quotation marks and citation omitted)). In this case, the majority affirms not on grounds provided by the BIA, but on grounds constructed by the majority.

The majority asserts that the BIA "addressed Rasiah's pattern or practice claim by quoting the IJ's conclusion that simply by being a Tamil Rasiah was not entitled to a 'blank check in order to receive asylum.'" The majority then proceeds to affirm this purported reasoning by the BIA, concluding that "[t]he treatment of Tamils, however deplorable, is not of a reach that entitles every Tamil in Sri Lanka to asylum based on ethnicity alone." However, the record makes clear that the BIA did not, as the majority suggests, consider the submitted evidence of country conditions and conclude

that Rasiah failed to establish systematic persecution of Tamils in Sri Lanka. See 8 C.F.R. § 208.13(b)(2)(iii); Balachandran, 566 F.3d at 272. Instead, the BIA expressly deemed it unnecessary to address Rasiah's pattern or practice claim in light of the IJ's prior adverse credibility finding as to Rasiah's accounts of past persecution.

Proving a well-founded fear of future persecution "generally requires individualized evidence that the applicant will be 'singled out' for persecution upon return to his home country." Kho, 505 F.3d at 54. The analysis of a pattern or practice claim, however, is different. Under the governing regulations, an asylum applicant need not demonstrate that he will be "singled out individually" for future persecution if the applicant establishes (1) "that there is a pattern or practice in his or her country of nationality . . . of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion," and (2) "his or her own inclusion in, and identification with, such group of persons such that his or her fear of persecution upon return is reasonable." 8 C.F.R. § 208.13(b)(2)(iii).

As the majority recognizes, evidence of prevailing country conditions may be relevant to either an individualized persecution claim or a pattern or practice claim. For example, evidence of country conditions may provide context and corroboration for the asylum applicant's personal accounts of past persecution, thereby

-14-

bolstering an individualized showing of persecution.  See El Moraghy,
331 F.3d at 203-04.  Alternatively, evidence of prevailing country
conditions may establish a pattern or practice of persecution of
persons similarly situated to the applicant, making it unnecessary
for the applicant to demonstrate that he will be singled out
individually for persecution.

In this case, the BIA decision's only reference to
Rasiah's pattern or practice claim appears in a footnote in which the
BIA expressly deemed it unnecessary to address the claim.  The BIA
concluded:

> Inasmuch as the respondent cannot meet his
> burden of proof without providing credible
> testimony as a result of the amendments
> created by the REAL ID Act, we do not deem it
> necessary to address his arguments on appeal
> pertaining to either his "pattern or practice"
> theory of relief or his claim based on a
> "particular social group" consisting of failed
> Sri Lankan asylum seekers.

(Emphasis added.)  The majority ignores this express statement of the
BIA that it was not necessary to address Rasiah's pattern or practice
claim, and instead asserts that the BIA addressed and rejected this
claim on the merits.  The majority relies on a portion of the BIA
decision in which the BIA adopted the IJ's reasoning that although
Rasiah submitted country reports and other evidence of widespread
abuses of Tamils in Sri Lanka, his Tamil ethnicity "does not give
[the respondent] a blank check in order to receive asylum."  However,
read in context, it is clear that this portion of the BIA decision

-15-

was addressed to Rasiah's individualized persecution claim, not his pattern or practice claim. In the portion of the BIA decision highlighted by the majority, the BIA concluded that the IJ properly based her adverse credibility finding in part on Rasiah's failure to corroborate basic elements of his past persecution claim, including his testimony that his brother and sister were shot and that his alleged relative, Gowrivalan, was shot and killed. The BIA then stated, in a footnote:

> On appeal the respondent contends that the Immigration Judge erroneously failed to consider the "overwhelming background materials" on country conditions as corroborative of the respondent's asylum claim. . . . However, as the Immigration Judge explained in her decision, just arriving in the United States from Sri Lanka "does not give [the respondent] a blank check in order to receive asylum" (I.J. at 21). Rather, first and foremost, the respondent must be credible, and then the respondent must meet his burden of proof of establishing that he is a refugee within the meaning of the Act. See sections 208(b)(1)(B)(i), (iii) of the Act (added by REAL ID Act § 101(a)(3)); 8 C.F.R. § 1208.13(a); Matter of J-Y-C-, [24 I & N Dec. 260,] 266 [(BIA 2007)]. In this case, the respondent failed to testify credibly and, as a result, failed to meet his burden of proof.

As this passage makes clear, the BIA was responding to Rasiah's argument that the evidence of country conditions corroborated his testimony that he and his family had personally experienced past persecution. Adopting the IJ's reasoning, the BIA concluded that Rasiah had failed to credibly testify that he or his family were targeted for past persecution, and therefore he had made

-16-

no individualized showing of past persecution that might be corroborated or otherwise supported by evidence of country conditions. The BIA did not address the distinct question of whether the evidence of country conditions established a pattern or practice of persecution under 8 C.F.R. § 208.13(b)(2)(iii), a claim that could have succeeded regardless of whether Rasiah credibly testified that he and his family were singled out for persecution in the past.

The BIA similarly declined to address the merits of Rasiah's pattern or practice claim on his motion to reopen. The BIA concluded that "even the fairly voluminous evidence of current country conditions in Sri Lanka that the respondent has submitted with his motion would [not] have resulted in a different disposition of the respondent's case because none of this evidence ameliorates the factual bases of the adverse credibility finding."

The majority relies on prior cases in which we have sustained the BIA's rejection of pattern or practice claims by ethnically Tamil Sri Lankans. See, e.g., Balachandran, 566 F.3d at 272-73; Ratnasingam, 556 F.3d at 14. In these cases, however, we reviewed a finding by the BIA that the petitioner had failed to establish a pattern or practice of persecution in his country, and concluded that the evidence did not compel a contrary conclusion. By contrast, in cases in which the BIA has failed to address a Sri Lankan Tamil's pattern or practice claim altogether, courts have remanded to the BIA to address this issue in the first instance. See

-17-

Rasananthan v. U.S. Att'y Gen., No. 08-10151, 2009 WL 2105539, at *2 (11th Cir. Jul. 17, 2009) (per curiam) (remanding where BIA failed to address pattern or practice claim by ethnically Tamil Sri Lankan); Thavendran v. Gonzales, 211 F. App'x 74, 75 (2d Cir. 2007)(summary order)(same); see also Balachandran, 566 F.3d at 273 n.1 (concluding that the BIA "considered and rejected" Sri Lankan Tamil's pattern or practice claim, and distinguishing a case cited by the petitioner in which "the government filed a motion to remand in the 11th Circuit where the BIA had failed to address a pattern-or-practice theory in any way," Vijayaratnam v. Holder, No. 09-10275 (11th Cir. Apr. 21, 2009)).

In this case, the BIA did not consider the evidence Rasiah submitted of frequent and escalating violence against Tamils in Sri Lanka, but instead expressly deemed it unnecessary to address Rasiah's pattern or practice claim. Because the BIA failed to address the pattern or practice claim on the merits, the case must be remanded to the BIA to address this issue in the first instance. See INS v. Ventura, 537 U.S. 12, 16 (2002)(per curiam); see also id. at 17 (citing considerations that support the "ordinary remand requirement" in the immigration context, including that "[t]he agency can bring its expertise to bear upon the matter; it can evaluate the evidence; it can make an initial determination; and, in doing so, it can, through informed discussion and analysis, help a court later determine whether its decision exceeds the leeway that the law

-18-

provides"); <u>Cordejo-Trejo</u> v. <u>INS</u>, 40 F.3d 482, 492 (1st Cir. 1994) (remanding where BIA failed to address petitioner's claim of pattern or practice persecution).

The majority goes to great lengths to construct grounds for affirmance and avoid remanding this case to the BIA. In the end, the majority's opinion appears to be driven by a conviction that remand would be futile because Rasiah's pattern or practice claim would likely be rejected by the BIA. However, the reviewing court is not authorized to make that determination in the first instance. Regardless of whether this court believes Rasiah's claim will be successful, he is entitled to have his claim heard and addressed on the merits by the BIA.

## II.

Having concluded that the BIA did not address Rasiah's pattern or practice claim on the merits and that the reviewing court cannot address that claim in the first instance, I next address the question of whether the BIA erroneously deemed it unnecessary to address his pattern or practice claim in light of the IJ's adverse credibility finding.[4] I conclude that the BIA erred in determining that the adverse credibility finding as to Rasiah's accounts of past

---

[4]This claim of error applies with equal force to both the BIA's denial of Rasiah's initial appeal and its subsequent denial of his motion to reopen: in both decisions, the BIA deemed it unnecessary to address the merits of his pattern or practice claim in light of the IJ's adverse credibility finding.

-19-

persecution precluded him from establishing a pattern or practice claim.

As the majority acknowledges, a prior adverse credibility finding as to past persecution does not necessarily foreclose a claim for asylum based on independent evidence of future persecution. As the Second Circuit has explained, with respect to petitions for both asylum and withholding of removal, "an applicant may prevail on a theory of future persecution despite an IJ's adverse credibility ruling as to past persecution, <u>so long as the factual predicate of the applicant's claim of future persecution is independent of the testimony that the IJ found not to be credible</u>." <u>Paul</u> v. <u>Gonzales</u>, 444 F.3d 148, 154 (2d Cir. 2006). The other circuits to have addressed this issue are in accord. <u>See</u> <u>Vakeesan</u> v. <u>Holder</u>, No. 08-3622, 2009 WL 2591034, at *9 (6th Cir. Aug. 21, 2009); <u>Rasananthan</u>, 2009 WL 2105539, at *2; <u>Gebreeyesus</u> v. <u>Gonzales</u>, 482 F.3d 952, 955 (7th Cir. 2007).

In <u>Paul</u>, the IJ denied the petitioner's asylum claim on adverse credibility grounds, finding his stories of past persecution unsupported, but credited his testimony that he was a practicing Christian. 444 F.3d at 152. The petitioner filed a motion to reopen based on updated country reports indicating increased persecution of Christians in Pakistan, and the BIA denied the motion, reasoning that the petitioner had failed to present any evidence challenging the adverse credibility finding. <u>Id.</u> On appeal, the court concluded

-20-

that the petitioner's claim that he feared future persecution as a Christian "could have succeeded regardless of the IJ's view of petitioner's stories of past persecution." Id. at 154-55. It thus held that the BIA abused its discretion in denying his motion to reopen without considering the objective evidence of deteriorating conditions for Christians in Pakistan. Id. at 155; see also Lin v. U.S. Dep't of Justice, 247 F. App'x 228, 232 (2d Cir. 2007)(summary order)(applying Paul to hold that remand was required where BIA did not address the merits of petitioner's pattern or practice claim and this claim was independent of the testimony found not credible).

Here, too, Rasiah's claim for asylum based on a pattern or practice of persecution against Tamils relies on facts independent of the testimony found not credible, and the prior adverse credibility finding does not foreclose his pattern or practice claim. The IJ found, and the BIA agreed, that Rasiah's accounts of past persecution were inconsistent and uncorroborated. However, Rasiah's pattern or practice claim is a claim that he has a well-founded fear of future persecution. It relies not on his personal accounts of past persecution, but on proof of (1) objective evidence of a pattern or practice of persecution of Tamils in Sri Lanka, and (2) his Tamil ethnicity. See 8 C.F.R. § 208.13(b)(2)(iii). Thus, Rasiah's claim for asylum based on a pattern or practice of persecution of Tamils "could have succeeded regardless of the IJ's view of [Rasiah's] stories of past persecution," see Paul, 444 F.3d at 154-155, and the

-21-

BIA erred in failing to consider Rasiah's proffered evidence of deteriorating conditions for Tamils in Sri Lanka.

The government relies on Ramsameachire v. Ashcroft, 357 F.3d 169 (2d Cir. 2004), a Second Circuit case decided prior to Paul, to argue that the IJ's adverse credibility determination precluded Rasiah from demonstrating a subjective fear of future persecution. In Ramsameachire, the IJ found that the petitioner had not demonstrated a credible fear of future persecution, noting that his stated reasons for fearing return to his native country had changed.[5] Id. at 176-77. The BIA upheld the IJ's adverse credibility finding and reasoned that, in light of that finding, it need not address the petitioner's pattern or practice claim. Id. at 177. The Second Circuit affirmed the BIA's decision, holding that the IJ's adverse credibility finding as to his subjective fear of future persecution foreclosed his claim for asylum based on a pattern or practice of persecution, because "[a]lthough [the petitioner's] pattern or practice evidence was relevant to the objective reasonableness of his fear of persecution, the BIA's adverse credibility determination precluded him from establishing the subjective prong of the well-founded fear standard." Id. at 183.

Even if I were to adopt Ramsameachire's reasoning, it would not lead me to the conclusion that the IJ's credibility finding

_____

[5]The IJ further found that the petitioner had not established that he had suffered past persecution, and noted inconsistencies in his accounts of alleged past persecution. Id. at 176.

-22-

in this case precluded Rasiah from establishing a subjective fear of future persecution. Unlike in Ramsameachire, where the IJ noted the petitioner's shifting explanations for his claimed fear of returning to his native country and expressly concluded that he failed to establish a credible subjective fear of future persecution, see id. at 176-77, here the IJ disbelieved Rasiah's stories of past persecution. As the Second Circuit explained in Paul, an adverse credibility finding as to past persecution does not preclude a petitioner from showing a subjective fear of future persecution. Instead, the adverse finding affects how the petitioner can prove the subjective element of his fear. 444 F.3d at 154 n.5. In Paul, for example, the court noted that the petitioner could not "assert that he subjectively fears persecution on the basis of what his family purportedly endured in the past" because the IJ had disbelieved those accounts of past persecution. Id. However, the petitioner could "still validly claim that he subjectively fears persecution because he is a Christian." Id. Similarly, here, Rasiah cannot claim a subjective fear of future persecution based on the discredited accounts of past persecution, but he could still attempt to establish that he subjectively fears future persecution based on his Tamil ethnicity and a pattern or practice of persecution of Tamils.

Of course, if the IJ had found that Rasiah failed to credibly establish his Tamil ethnicity, his pattern or practice claim would necessarily fail. See 8 C.F.R. § 208.13(b)(2)(iii)(B) (an

asylum applicant must establish "his or her own inclusion in, and identification with, such group of persons such that his or her fear of persecution upon return is reasonable"). However, the IJ did not indicate, and the government does not contend, that the IJ disbelieved petitioner's testimony as to his Tamil ethnicity. Indeed, the IJ appeared to credit this testimony, stating that "the respondent, by the fact that he is a Tamil, by the fact he is from Sri Lanka, that does not give him . . . a blank check in order to receive asylum in the United States."[6]

In its denial of Rasiah's initial appeal, and again in its denial of his motion to reopen, the BIA committed an error of law in concluding that the adverse credibility finding as to Rasiah's accounts of past persecution precluded him from establishing a claim of pattern or practice persecution. I would remand this case to the

---

[6]In denying Rasiah's motion to reopen, the BIA relied on Lemus v. Gonzales, 489 F.3d 399 (1st Cir. 2007), in which we held that the petitioner's motion to reopen could not succeed because, inter alia, she had not presented evidence rebutting the IJ's prior adverse credibility finding. We affirmed the BIA's denial of petitioner's motion to reopen, noting that "[t]o cinch matters, the newly proffered information does nothing to rehabilitate the petitioner's failed credibility -- and as said, the final administrative decision in this case hinged mainly on an adverse credibility determination." Id. at 401. In Lemus, however, the discredited testimony as to petitioner's past political activity was the very testimony underlying her asylum claim on the motion to reopen. Id. at 400-01. Here, the discredited testimony as to Rasiah's experiences of past persecution is entirely independent of his claim of future persecution based on a pattern or practice of persecution of Tamils.

BIA to address the merits of Rasiah's pattern or practice claim in the first instance.  See Ventura, 537 U.S. at 16.