# United States Court of Appeals
## For the First Circuit

No. 18-1122

FRANCISCO AVELAR GONZALEZ,

Petitioner,

v.

MATTHEW G. WHITAKER,[*]
ACTING ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Lynch, Stahl, and Lipez,
Circuit Judges.

Carlos E. Estrada, Ashley M. Barkoudah, and Estrada Law Office
on brief for petitioner.
Maarja T. Luhtaru, Trial Attorney, Civil Division, U.S.
Department of Justice, Chad A. Readler, Acting Assistant Attorney
General, Civil Division, and Rachel L. Browning, Acting Senior
Litigation Counsel, Office of Immigration Litigation, on brief for
respondent.

November 15, 2018

---

[*]    Pursuant to Fed. R. App. P. 43(c)(2), Acting Attorney
General Matthew G. Whitaker has been substituted for former
Attorney General Jefferson B. Sessions, III as the respondent.

**LYNCH**, **Circuit Judge**.  Francisco Avelar-Gonzalez, a native and citizen of El Salvador, seeks judicial review of a Board of Immigration Appeals (BIA) decision affirming an Immigration Judge's (IJ) denial of Avelar-Gonzalez's requests for asylum under the Immigration and Nationality Act (INA) § 208(a), 8 U.S.C. § 1158(a), for withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and for protection under Article 3 of the United Nations Convention Against Torture (CAT).[1]

We focus on his argument, which underlies all his claims, that the BIA erred in upholding the IJ's determination that Avelar-Gonzalez did not provide adequate corroboration for his claims. There is substantial evidence for the determination that Avelar-Gonzalez did not provide adequate corroboration, which was reasonably available to him, for crucial elements of his claims, and so we deny the petition for review.  We dismiss for lack of jurisdiction Avelar-Gonzalez's claims regarding past persecution, ineffective assistance of counsel, and protection under the CAT.

I.

Avelar-Gonzalez entered the United States on January 29, 2012, near Hidalgo, Texas.  The next day, he gave a sworn statement

---

[1]    The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, was implemented in the United States by the Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. No. 105-277, § 2242, 112 Stat. 2681-761 (codified at 8 U.S.C. § 1231 (2012)).

to the Border Patrol, discussed later. On February 20, 2012, the Department of Homeland Security served Avelar-Gonzalez with a Notice to Appear in removal proceedings, and charged him with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled. On March 16, 2012, Avelar-Gonzalez, through prior counsel, conceded to the charge of removability, declined to name a country for removal, and stated that he would seek "relief in the form of asylum, withholding of removal, [and the] Convention Against Torture." A change of venue to Boston was granted on July 13, 2012.

Avelar-Gonzalez filed an application for asylum on December 11, 2012. The affidavit attached to Avelar-Gonzalez's 2012 asylum application contained only a single general paragraph alleging being "chased . . . out of [El Salvador]" due to involvement with the Nationalist Republican Alliance (ARENA), a political party. The affidavit did not mention any specific persecution or harm that Avelar-Gonzalez had experienced. Further, Avelar-Gonzalez did not answer whether he, his family, or his close friends or colleagues had experienced mistreatment or harm in the past, and did not provide the requested information about his background, such as his address, past residences, education, employment, and family members.

On January 5, 2017, more than four years after his initial application and almost five years after entering the United States, Avelar-Gonzalez then filed what the parties refer to as an "updated application" for asylum. The IJ evaluated the updated application. Avelar-Gonzalez's updated asylum application stated that he had a fear of persecution based on his political party membership. He supported that with a lengthier 2017 affidavit, filed with the updated application, which stated, "I left my country because my life was at risk on account of my political opinion." As to his political opinion, Avelar-Gonzalez said that he was an active member of ARENA.

Avelar-Gonzalez's affidavit described three violent incidents in El Salvador after Avelar-Gonzalez joined ARENA in 2007. First, while he and other ARENA members were "involved in outreach efforts" in March 2008, a group from a rival political party, Farabundo Martí National Liberation Front (FMLN), accosted and physically assaulted them. He escaped, with bruises. Second, while he was campaigning with other ARENA members in November 2008, a group of people wearing FMLN shirts threatened the ARENA members, and then shot at them. Two members of the ARENA group were shot, though Avelar-Gonzalez was not, and the police took witness statements. A report was compiled, but no copies were provided. Third, around February 2009, Avelar-Gonzalez was threatened at knifepoint by men in FMLN t-shirts while leaving a football match,

because he refused to remove an ARENA t-shirt he was wearing. Avelar-Gonzalez did not report this incident to the police and does not claim he was injured during this incident. Avelar-Gonzalez's affidavit did not mention any incidents of persecution or harm after the February 2009 incident, though he was in El Salvador for nearly three more years before entering the United States on January 29, 2012.

At a merits hearing before an IJ on March 7, 2017, Avelar-Gonzalez testified that he had left El Salvador due to attacks based on his ARENA membership. When testifying, Avelar-Gonzalez was at times unable to remember details about the three violent incidents, such as where and when the shooting had occurred or how many FMLN members were involved in the March 2008 incident. As to the March 2008 incident, Avelar-Gonzalez testified that this altercation started when FMLN members attempted to "destroy the [ARENA party] propaganda," or promotional material. After ARENA members "were opposed to that," the FMLN members then began hitting the ARENA members. The police responded to the incident; Avelar-Gonzalez said ARENA officials filed a report with the police, but again he did not provide a copy. Avelar-Gonzalez also testified that he was threatened about ten other times beyond the three incidents mentioned in his affidavit, including in phone calls and written notes, but he did not provide detail regarding these incidents, nor did he describe these threats in his affidavit. He

was also unable to remember "approximately what . . . these notes" said.

Avelar-Gonzalez's immigration record contained a sworn statement given to Border Patrol agents on January 30, 2012, the day after he crossed the border. In this sworn statement, Avelar-Gonzalez said that he left El Salvador in order "[t]o live and to look for work in Miami, Fl[orida]." When asked if he had "any fear or concern about being returned to [his] home country or being removed from the United States," he stated "[n]o." He also answered "[n]o" when asked, "[w]ould you be harmed if you are returned to your home country or country of last residence?" In front of the IJ, Avelar-Gonzalez testified that he did not remember giving this sworn statement to Border Patrol agents, and that he did not remember telling the agents that he did not have a concern about being returned to El Salvador or otherwise removed from the United States. He did, however, acknowledge that his signature was on the sworn statement, and he did not claim that the interview with the Border Patrol had not happened.

In an oral decision on March 7, 2017, the IJ denied Avelar-Gonzalez's applications. The IJ noted a number of inconsistencies between Avelar-Gonzalez's affidavit and his testimony regarding the three violent incidents, and expressed concern with Avelar-Gonzalez's vague testimony and inability to remember, or provide detail about, several important events. For

example, the IJ noted that Avelar-Gonzalez testified that he was not injured during the March 2008 incident, before being confronted about the inconsistency with his affidavit. Avelar-Gonzalez amended his testimony to say that the declaration was correct rather than his initial testimony.

The IJ further stated that Avelar-Gonzalez's testimony was "somewhat at odds" with his affidavit regarding the February 2009 incident, including when and where the incident occurred and whether he was threatened at knifepoint or was shot at by FMLN members. Also, the IJ noted that Avelar-Gonzalez "was not able to remember what happened in November 2008," and that this was a significant event for his asylum application, as fellow ARENA members were allegedly shot by FMLN members. The IJ stated that these particular inconsistencies and vague testimony "g[a]ve the court pause," but the IJ did not hold them against Avelar-Gonzalez.

The IJ then expressed further concern with the "different version of events that [Avelar-Gonzalez] told to the Border Patrol," as compared to Avelar-Gonzalez's declaration and testimony before the IJ. The IJ also raised a concern regarding Avelar-Gonzalez's testimony that he had been threatened numerous times after the February 2009 incident, since these threats were not discussed in Avelar-Gonzalez's affidavit and Avelar-Gonzalez failed to provide detail about these threats during his testimony.

Due to these concerns regarding inconsistencies, vagueness, and the omission of important events from Avelar-Gonzalez's application, the IJ had "serious doubts [about] the respondent's credibility." The IJ determined that Avelar-Gonzalez had not produced necessary corroboration, such as police reports from the November 2008 attack, medical records from fellow ARENA party members' injuries, or notes related to the threats. The IJ found that further corroborating evidence "appears to have been reasonably available" (given that at least his mother and aunt remained in El Salvador), and that Avelar-Gonzalez "did not adequately explain his failure to supply such corroborating evidence." Avelar-Gonzalez did provide a notarized letter recounting statements from two persons in El Salvador[2] and a letter from a representative of ARENA. The second letter confirms Avelar-Gonzalez was "part of the team of ARENA activists." It says that

---

[2]     The IJ referred to this letter as "from his parents," as did the BIA. This appears to be incorrect based on the record, which indicates that the letter was from two people who did not say how they knew Avelar-Gonzalez, though the letter does refer to Avelar-Gonzalez's parents. Avelar-Gonzalez testified that his father is dead, though Avelar-Gonzalez's updated asylum application stated that his father was then alive and living in El Salvador.

In any case, labeling the letter as from Avelar-Gonzalez's parents is at most harmless error, because the IJ considered the letter's contents fairly, and did not discount or credit the letter based on its authorship. See Butt v. Keisler, 506 F.3d 86, 90 (1st Cir. 2007) (holding that a mistake of fact by an IJ constituted harmless error because it did not affect the outcome of the decision).

"based on the high crime conditions . . . of El Salvador and mainly the district of Colon Township [that Avelar-Gonzalez] has been faced with on a daily bas[i]s[,] he had no choice but to migrate to the United States because his life was in danger."

However, the IJ noted that the notarized letter from two persons stated that Avelar-Gonzalez was attacked in December 2011 by gang members from both the "MS" and "18" gangs (not the FMLN), and did not provide any further detail on the motivations for these attacks. Further, the three incidents Avelar-Gonzalez testified to were in 2008 and 2009, not 2011. The letter from the representative of ARENA confirms that Avelar-Gonzalez was a member of ARENA, but otherwise does not confirm his declaration or his testimony. The IJ concluded that Avelar-Gonzalez did not meet his burden to show that the events actually happened, essential for asylum, even considering the so-called corroborating evidence.

We do not detail all of the IJ's findings and conclusions regarding asylum. The IJ denied Avelar-Gonzalez's applications for asylum and for withholding of removal (which requires meeting a higher standard). Finally, considering the CAT claim, the IJ determined that Avelar-Gonzalez had not demonstrated that it was more likely than not that he would be tortured by or with the consent of a public official if he returned to El Salvador.

Avelar-Gonzalez appealed the IJ's decision to the BIA. The BIA dismissed the appeal on January 9, 2018. Adopting some of

the IJ's decision, the BIA determined that the IJ did not err in concluding that Avelar-Gonzalez had not provided adequate corroborating evidence for the basic elements of his asylum claim, and did not err in the weight ascribed to the two letters submitted by Avelar-Gonzalez. It affirmed denial of relief, noting that Avelar-Gonzalez did not claim past persecution in his appeal, and did not argue a CAT claim.

## II.

We review the BIA's legal conclusions de novo, albeit "with some deference to the agency's expertise in interpreting both the statutes that govern its operations and its own implementing regulations." Vega-Ayala v. Lynch, 833 F.3d 34, 38 (1st Cir. 2016) (quoting Alvizures-Gomes v. Lynch, 830 F.3d 49, 52 (1st Cir. 2016)). We review the BIA's findings of fact and credibility under a "highly deferential" substantial evidence standard, Nikijuluw v. Gonzales, 427 F.3d 115, 120 (1st Cir. 2005), under which we uphold the BIA's findings "if 'supported by reasonable, substantial, and probative evidence on the record considered as a whole[,]'" I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C. § 1105a(a)(4)). We uphold such findings "unless any reasonable adjudicator would be compelled to conclude to the contrary." Silva v. Gonzales, 463 F.3d 68, 72 (1st Cir. 2006) (quoting 8 U.S.C. § 1252(b)(4)(B)). "When the BIA adopts and affirms the IJ's ruling but also examines some of the

- 10 -

IJ's conclusions, this Court reviews both the BIA's and IJ's opinions." Villalta-Martinez v. Sessions, 882 F.3d 20, 23 (1st Cir. 2018) (quoting Perlera-Sola v. Holder, 699 F.3d 572, 576 (1st Cir. 2012)).

An alien seeking asylum bears the burden of establishing that he or she is a "refugee" as defined by the INA. Villa-Londono v. Holder, 600 F.3d 21, 24 (1st Cir. 2010). To do so, the alien must establish either past persecution or a well-founded fear of future persecution, both subjective and objective, "on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). An alien's testimony can be enough to establish this status, see Segran v. Mukasey, 511 F.3d 1, 5 (1st Cir. 2007), but "testimony need not be taken at face value," Rivas-Mira v. Holder, 556 F.3d 1, 4 (1st Cir. 2009).

A.    Lack of Corroboration

In our view, this case turns on the issue of Avelar-Gonzalez's failure to provide adequate corroboration of his story. After reviewing the record, we find that the BIA did not err in upholding the IJ's conclusion that Avelar-Gonzalez did not provide adequate corroboration to establish elements of his asylum claim. The IJ noted inconsistencies and vague testimony regarding important facts, including about the three primary incidents and about alleged later threats. The IJ expressed special concern

- 11 -

regarding the inconsistency between Avelar-Gonzalez's story as related in his asylum application and testimony, and his story in the sworn statement to the Border Patrol agents in 2012, where Avelar-Gonzalez stated that he did not have a fear of being returned to El Salvador and that he had come to the United States simply "[t]o live and to look for work in Miami, Fl[orida]." As a result, the IJ had "serious doubts [about] the respondent's credibility."

Based in part on these credibility concerns -- though with no adverse credibility finding -- the IJ determined that Avelar-Gonzalez's claims required further corroboration, about the events themselves and about the reasons why Avelar-Gonzalez was targeted (if he was in fact targeted). "The weaker an applicant's testimony, the greater the need for corroborating evidence." Soeung v. Holder, 677 F.3d 484, 488 (1st Cir. 2012).

As the IJ correctly explained, the letter from a representative of ARENA did not mention any attacks or targeting due to political affiliation; instead, the letter generally mentioned Avelar-Gonzalez's need to move due to "the high crime conditions." The IJ also properly pointed out that the other letter mentioned attacks by the "MS" gang and the "18" gang in 2011, but did not mention earlier incidents or clearly provide reasons for the 2011 attacks. Nor did Avelar-Gonzalez mention these 2011 attacks during his testimony. Furthermore, Avelar-

Gonzalez did not explain why he did not include in his affidavit any discussion of events occurring after early 2009, including the 2011 attacks. As it stands, nothing in his affidavit mentions any harm or persecution in El Salvador during the almost three years before he left the country. Avelar-Gonzalez did not provide further corroborating evidence such as police reports from the shooting incident, threatening written notes he received, or medical reports from injuries he says other ARENA members suffered. Nor did he provide evidence from a parent or other relative corroborating his testimony.

IJs can require corroboration without making an adverse credibility determination. Balachandran v. Holder, 566 F.3d 269, 273 (1st Cir. 2009). "[S]uch [corroborating] evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." 8 U.S.C. § 1158(b)(1)(B)(ii). Here, the IJ explicitly found that corroborating evidence "appears to have been reasonably available" and that Avelar-Gonzalez "did not adequately explain his failure to supply such corroborating evidence." "[T]hese findings are entitled to deference." Soeung, 677 F.3d at 488 (citing 8 U.S.C. § 1252(b)(4)).

It was reasonable for the IJ to conclude that some further corroborating evidence should have been available. Submitting the two letters "show[s] both that he was able to obtain corroborating items . . . and that he was aware of the need to

- 13 -

provide documentation in support of his application." Balachandran, 566 F.3d at 273; see In re S-M-J-, 21 I. & N. Dec. 722, 725 (BIA 1997) ("[A]n asylum applicant should provide documentary support for material facts which are central to his or her claim and easily subject to verification."). Avelar-Gonzalez did not provide a clear or sufficient explanation for why no further corroboration was provided or available. And Avelar-Gonzalez filed his updated asylum application nearly five years after entering the United States, clearly ample time to complete a more comprehensive application, including evidence that actually corroborated his assertions.

The BIA's determination, upholding the IJ, regarding Avelar-Gonzalez's failure to produce sufficient corroborating evidence is supported by substantial evidence. We stress again that Avelar-Gonzalez bore the burden of substantiating the facts underlying his asylum claim. See Bahta v. Lynch, 835 F.3d 65, 72 (1st Cir. 2016). In claiming a well-founded fear of future persecution, Avelar-Gonzalez relies heavily on the past events that have not been adequately corroborated. His future persecution claim cannot survive this failure of corroboration, and he does not argue otherwise. See generally Khan v. Mukasey, 541 F.3d 55, 58 (1st Cir. 2008) (denying petitioner's CAT claim "because it depended on the same uncorroborated evidence as his asylum claim").

B.   Withholding of Removal

Since the standard for withholding of removal is more stringent than the standard for asylum, see Alvarez-Flores v. I.N.S., 909 F.2d 1, 4 (1st Cir. 1990),[3] "our disposition of the petitioner's asylum claim dooms his withholding of removal claim as well," Rivera-Coca v. Lynch, 844 F.3d 374, 381 (1st Cir. 2016).

C.   Claims Over Which We Have No Jurisdiction

1.   Past Persecution

Avelar-Gonzalez has failed to exhaust his administrative remedies on his past persecution claim, having failed to make any clear argument concerning past persecution to the BIA, as the BIA noted.   The BIA said, as a result, it did not consider this argument.   "A failure to present developed argumentation to the BIA on a particular theory amounts to a failure to exhaust

---

[3]   To establish eligibility for asylum based on future persecution, an applicant must show a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."   8 U.S.C. § 1101(a)(42)(A).   To establish eligibility for withholding removal under 8 U.S.C. § 1231(b)(3) based on future persecution, an applicant must "establish that it is more likely than not that he or she would be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion upon removal to [a] country."   8 C.F.R. § 1208.16(b)(2) (emphasis added).   The Supreme Court has held that for a well-founded fear of future persecution in an asylum claim, "it need not be shown that the situation will probably result in persecution, but it is enough that persecution is a reasonable possibility," at least sometimes including cases where the chance of harm is "10%[.]"   I.N.S. v. Cardoza-Fonseca, 480 U.S. 421, 440 (1987) (quoting I.N.S. v. Stevic, 467 U.S. 407, 424-25 (1984)).

administrative remedies as to that theory." Ramirez-Matias v. Holder, 778 F.3d 322, 327 (1st Cir. 2015).

## 2. Protection Under the CAT

Avelar-Gonzalez also claims that the IJ and the BIA "improperly considered" his request for protection under the CAT, and particularly his argument concerning non-refoulement under Article 3 of the CAT. He did not make this argument to the BIA. "[I]t is black-letter law that 'arguments not raised before the BIA are waived due to a failure to exhaust administrative remedies.'" García v. Lynch, 821 F.3d 178, 182 (1st Cir. 2016) (quoting Shah v. Holder, 758 F.3d 32, 37 (1st Cir. 2014)); see 8 U.S.C. § 1252(d)(1). That Avelar-Gonzalez made an argument concerning the CAT to the IJ does not suffice: "an alien cannot leapfrog over the BIA; that is, he cannot proffer a theory to the IJ, forgo any presentation of that theory to the BIA, and then resurrect the theory on a petition for judicial review." Ramirez-Matias, 778 F.3d at 327.

## 3. Ineffective Assistance of Counsel

Avelar-Gonzalez next argues that his due process rights were violated, because his former counsel was so ineffective that Avelar-Gonzalez did not obtain a fair hearing before the BIA. There is no Sixth Amendment right to counsel in deportation proceedings because they are not criminal. Lozada v. I.N.S., 857 F.2d 10, 13 (1st Cir. 1988). However, this court has held that if

the deportation proceeding "was so fundamentally unfair that the alien was prevented from reasonably presenting his case," that constitutes a due process violation. Id. (quoting Ramirez-Durazo v. INS, 794 F.2d 491, 499-500 (9th Cir. 1986)).

Here, Avelar-Gonzalez's ineffective assistance of counsel claim is not properly before us, because he did not exhaust his administrative remedies and has not shown good cause for this failure.[4] Though "[t]here are some claims of denial of due process or deprivation of constitutional rights that are exempt from this exhaustion requirement because the BIA has no power to address them, . . . [t]he BIA has procedures to hear ineffective assistance of counsel claims through a motion to reopen." Bernal-Vallejo v. I.N.S., 195 F.3d 56, 64 (1st Cir. 1999); see Hernandez v. Reno, 238 F.3d 50, 55 (1st Cir. 2001) ("In the ordinary case, . . . [a petitioner] must use the Board's own procedures to resolve his competency of counsel claims."). Avelar-Gonzalez did not file a motion to reopen here, and has made no showing of good cause for not doing so.

---

[4]    Avelar-Gonzalez's claim of ineffective assistance focuses on the inclusion of arguably irrelevant material in his submission to the BIA and the concession of his past persecution claim. It does not go to Avelar-Gonzalez's insufficient presentation of facts or of corroborating evidence. The BIA's primary holding was that the IJ did not err in concluding that Avelar-Gonzalez had not provided adequate corroboration to establish elements of his asylum claim.

III.

Avelar-Gonzalez's petition for review is <u>denied</u> as to his challenge to the BIA's upholding of the IJ's finding of lack of corroboration.  It is <u>dismissed</u> for lack of jurisdiction as to his past persecution challenge, his due process challenge, and his CAT challenge.