NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0179-20

SHARAD YAGNIK and
MONA YAGNIK, h/w

      Plaintiffs-Respondents,

v.

PREMIUM OUTLET
PARTNERS, LP, d/b/a
LIBERTY VILLAGE PREMIUM
OUTLETS, GEO MATRIX
CONSTRUCTION, CORP.,
PETER GIANCOLA AND SONS,
INC., LONGFORD
LANDSCAPES and
EXCAVATION, INC.,

      Defendants,

and

PENNONI ASSOCIATES,
INC.,

      Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

March 29, 2021

APPELLATE DIVISION

Argued February 22, 2021 – Decided March 29, 2021

Before Judges Sabatino, Currier and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law
Division, Mercer County, Docket No. L-2601-18.

Gary C. Chiumento and Juan C. Perez argued the cause for appellant Pennoni Associates, Inc. (Chiumento McNally, LLC, attorneys; Gary C. Chiumento and Juan C. Perez, on the briefs).

Scott A. Fellmeth argued the cause for respondents (Saltz Mongeluzzi & Bendesky, PC, attorneys; Larry Bendesky, Adam J. Pantano, Robert W. Zimmerman, and Scott A. Fellmeth, on the brief).

Jonathan H. Lomurro argued the cause for amicus curiae The New Jersey Association for Justice (Lomurro, Munson, Comer, Brown & Schottland, LLC, attorneys; Jonathan H. Lomurro, of counsel and on the brief; Christina Vassiliou Harvey and Alan J. Weinberg, on the brief).

Anthony Cocca argued the cause for amicus curiae New Jersey Defense Association (Cocca & Cutinello, LLP, attorneys; Anthony Cocca and Katelyn E. Cutinello, of counsel and on the brief).

Lawrence P. Powers argued the cause for amicus curiae American Institute of Architects-New Jersey, New Jersey Society of Professional Engineers, American Society of Landscape Architects-New Jersey, New Jersey Society of Professional Land Surveyors and the New Jersey Chapter of the American Society of Civil Engineers (Hoagland, Longo, Moran, Dunst & Doukas, LLP, attorneys; Lawrence P. Powers, of counsel and on the brief; Peter K. Oliver, on the brief).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

A-0179-20

We granted leave to appeal in this construction site accident case to address an unresolved question of New Jersey law. The question is this: When is an Affidavit of Merit ("AOM") under N.J.S.A. 2A:53A-27, supporting claims against a licensed professional, due in situations where a plaintiff's original complaint is later amended and additional answers or other pleadings are filed?

In the present case, plaintiffs served AOMs (one from an engineer and another from an architect) more than 120 days after the defendant engineering firm filed its answer to the original complaint, but before that firm answered an amended complaint naming another defendant.

Relying in part on several federal decisions interpreting New Jersey law, the trial court ruled the deadline for an AOM "does not come into play until the pleadings are [all] settled." Based on that reasoning, the court deemed timely the two AOMs tendered by plaintiffs more than a year after the engineering firm had filed its original answer and first amended answer.

For the reasons that follow, we respectfully disagree with the non-binding federal caselaw cited by the trial court. Instead, we hold the AOM statute's text and legislative purposes require the affidavit to be served within 60 days (extendable for good cause to 120 days) from the date when the licensed professional files its answer, regardless of whether the pleadings are

3

subsequently amended to name other defendants or assert additional claims. That deadline is subject, however, to the long established AOM exceptions for (1) substantial compliance or (2) extraordinary circumstances.

As we shall explain, extraordinary circumstances are present here and justify an extension of time to permit the late AOM filing. The circumstances stem from the parties' early negotiation of a stipulation that dismissed the engineering firm from the lawsuit without prejudice, based on representations the firm had no role in the allegedly unsafe condition of the stairs on which plaintiff was injured. The 120-day AOM deadline expired during the weeks while the stipulation was being negotiated by counsel, but defendant chose not to move at that time for a with-prejudice dismissal on that basis.

When ensuing discovery revealed the engineering firm's actual involvement in designing the stairs, the trial court allowed plaintiffs to reinstate their malpractice claims against the firm. Plaintiffs then promptly served the AOMs. Given how events unfolded, the situation justified plaintiffs' delay in tendering the AOMs.

We therefore affirm the trial court, albeit for slightly different reasons than were set forth below, and remand the case for further proceedings.

A-0179-20

I.

The procedural history and still-developing facts are intertwined. For our purposes we highlight the following details.

On the afternoon of December 16, 2016, plaintiff[1] Sharad Yagnik fell and injured his right elbow while entering the Liberty Village Premium Outlets in Flemington. At the time, plaintiff was walking up the stairs through an access area, which was under construction for improvements but apparently still open to the public. His trip and fall on the accessway required extensive surgery to repair his shattered elbow.

Plaintiffs filed a civil action in the Law Division in December 2018, initially naming as defendants the owner-operator of the shopping outlet, the contractors for the site, and the present appellant, Pennoni Associates, Inc. ("Pennoni"), an engineering firm that performed certain services for the construction.[2] As is common in construction site accident cases—for which

---

[1] We refer to Sharad Yagnik in the singular as "plaintiff," recognizing that his wife Mona Yagnik is a co-plaintiff.

[2] It is unclear whether Pennoni provided in this project engineering services, architectural services, or both. Both professions are included within the scope of licensed professionals covered by the AOM statute. N.J.S.A. 2A:53A-26(b)(architects); -26(e)(engineers); see also Hill Int'l, Inc. v. Atlantic City Bd.

5

additional responsible parties are often later identified through discovery—plaintiffs' complaint named several entities and persons as fictitious defendants.

According to plaintiffs' original complaint, one or more of the defendants used an "off-white color concrete" in constructing the stairs, which was the same color used in the nearby ramp. The matching color allegedly failed to create a visual contrast that could aid pedestrians in distinguishing the stairs from the inclined surface of the ramp, and defendants failed to "ensure handrails were placed and/or installed at the access point for the shops." Further, plaintiffs alleged defendants were negligent by failing to "ensure that cone and/or safety barriers were placed and/or installed around the staircase" while construction was ongoing.

The Original Complaint Through Stipulation of Dismissal

Notably, the civil case information form accompanying the original complaint was marked "No" in response to the question "Is this a professional malpractice case?" Despite that response, plaintiffs alleged in the original complaint that "Pennoni was contracted to design and/or engineer a new

of Educ., 438 N.J. Super. 562, 571 (App. Div. 2014) (noting the differing but overlapping expertise of architects and engineers), leave to appeal granted, 221 N.J. 283 (2015), appeal dismissed, 224 N.J. 523 (2016). For simplicity, we shall refer to Pennoni as an "engineering firm" in this opinion.

staircase on the access area on the west side of the Property." (Emphasis added).

Further, the complaint also alleged:

> As an architect, Pennoni had a duty to design, maintain, engineer, fabricate, plan, plot, supervise and/or establish proper and adequate procedures to ensure that the construction of the walkways, staircases and means of access to the shops on the Property could be completed safely, and to protect and/or otherwise warn business invitees, such as Mr. Yagnik, of any dangerous conditions.
>
> [(Emphasis added).]

On January 21, 2019, Pennoni filed an answer to the original complaint. In the answer, Pennoni asserted numerous defenses, among them an anticipatory defense that "Plaintiff failed to meet the requirements of the Affidavit of Merit Statute," despite the fact that the statutory time period for serving an AOM does not begin to run until the professional's answer is filed. See N.J.S.A. 2A:53A-27.

Then, on February 8, 2019, Pennoni unilaterally filed an amended answer to the original complaint. In that amended answer, Pennoni realleged the AOM defense. Along with that amended answer, Pennoni filed an amended civil case information form, changing its response to the question "Is this a professional malpractice case?" to "Yes." Pennoni also moved, without opposition, for an

7

order changing the track assignment of the case from Track II to Track III because of the professional liability nature of plaintiffs' claims against it. The trial court granted that motion, thereby allowing a lengthier 450 days of discovery as a Track III case.

Meanwhile, plaintiffs' counsel sought to ascertain Pennoni's actual involvement in the unsafe condition of the premises and served document demands and interrogatories. On February 8, the same day of Pennoni's amended answer, plaintiffs' counsel sent an email to Pennoni's counsel saying he had left a message with his assistant and would "like to see if we can fast track getting information and documents from your client to see the extent of its involvement here." Plaintiffs' counsel sent a follow up email on February 27, to which Pennoni's lawyer responded that he had not yet had a chance to speak with his clients.

Counsel again exchanged emails on March 13, a date still within the first sixty days of Pennoni's initial answer. Plaintiffs' attorney said he was "circling back" to find out if Pennoni's counsel had spoken with his clients and whether he had obtained any documents "regarding the extent of [their] involvement." Pennoni's counsel replied a few hours later, with an email that made the following salient representations:

8

> PAI [Pennoni] provided a design for exterior improvements throughout the shopping center. <u>Their role during actual construction was limited to 5 site visits at times/locations selected by the Owner and would not have included an examination of the contractor's means and methods (inclusive of site control methods)</u>. Our review of the site visit dates suggest that [Pennoni] was <u>not on site for several months before the date of accident and not again until several months thereafter</u>. That is, they were not on site at the time of the accident.
>
> [(Emphasis added).]

One week later, on March 20, plaintiffs' counsel and Pennoni's counsel had a further conversation, in which they began to pursue negotiations that eventually culminated in a without-prejudice dismissal of Pennoni from the lawsuit. Toward that end, Pennoni's counsel emailed plaintiff's counsel the following:

> [C]onfirming our discussion today at which time we addressed the prospect of a dismissal (even if only "without prejudice") as a result of an affidavit from my client which disavowed any involvement in the contractors' construction means and methods (including site safety techniques) for the project . . . . I will explore this prospect with my client as soon as possible.

Pennoni's counsel added that "[i]f we are able to come to an understanding on this point, we should be prepared to discuss terms and conditions under which [p]laintiff[s] could reinstate the complaint."

With respect to the AOM deadline, Pennoni's counsel's March 20 email stated: "In the meantime and to avoid . . . unnecessary expense and discovery, I am willing to consent to an extension of the time from which to provide an Affidavit of Merit by 2 additional weeks (14 days) beyond the initial 60 day period following our answer to the complaint."

Thereafter, plaintiffs' counsel sought an update from Pennoni's counsel on March 28, asking about the status of an affidavit of Pennoni's non-involvement and for a copy of the contract for the project. He followed up again with an email on April 2, which read—significantly for our AOM timing purposes here:

> [H]aven't heard back from you. Any update? Our affidavit of merit is due Friday. Thanks.[3]

That same day, April 2, Pennoni's counsel replied by email with more assurances about extending the AOM deadline, along with these further representations about the facts:

> First, my client is <u>willing to extend any AOM time deadline as necessary in this matter including and up to an additional 60 day period beyond the initial 60 day period for a total of 120 days from the date the original answer was filed</u> in this matter.

---

[3]  We infer from the calendar that counsel was referring to Friday, April 5, which was 74 days after Pennoni filed its original answer and 56 days after Pennoni filed its amended answer. <u>R.</u> 1:3-1.  We are unsure what calculations counsel was using to compute the perceived AOM deadline.

A-0179-20

More importantly, my client has agreed in principle to provide <u>an appropriate affidavit/certification regarding the fact that it was not responsible for the jobsite safety conditions, was not on the site at or around the time of Plaintiff's accident and had no responsibility for regular, routine job site inspections of any type during construction</u>.

[(Emphasis added).]

Pennoni's counsel specifically proposed:

[My client] would prefer a stipulation of dismissal with prejudice or, at worst, would be willing to provide a stipulation without prejudice subject to certain pre-conditions on the right of Plaintiff to re-instate. I am in the process of preparing a draft stip[ulation] and a draft certification for your review.

[(Emphasis added).]

In furtherance of their cooperative discussions, Pennoni's counsel sent to plaintiff's counsel on April 23 the "construction administration services" contract.

Then, in a collateral development, plaintiffs filed a motion for leave to file an amended complaint seeking to add as a defendant Longford Landscape and Excavation, Inc., ("Longford") based upon the contents of a third-party complaint against Longford that had been filed by one of the contractor

11

defendants.  On May 10, the trial court entered an unopposed order granting plaintiffs leave to so amend the complaint.

On or about the same day, plaintiffs filed a "first amended complaint" adding Longford as a defendant.  The amended complaint made the same allegations as to Pennoni as plaintiffs had made originally.

While negotiations about a voluntary dismissal were still pending, plaintiffs kept seeking discovery from Pennoni.  Among other things, plaintiffs requested documents related to Pennoni's involvement in the construction phase of the premises, and particularly the staircase on which Mr. Yagnik fell. Pennoni's responses were not detailed or very informative, generally either directing plaintiffs to the "project file" or objecting on privilege or other grounds.

In or about "early" June 2019,[4] Pennoni eventually supplied plaintiffs' counsel with an undated certification from the company's office director, in an effort to substantiate Pennoni's alleged lack of responsibility for the unsafe condition that existed on the day of plaintiff's accident.  The company official certified that he had supervised Pennoni's employees on this project.

---

[4]  The precise date is not clear from the record.

Based on his understanding of the contracts, the company official asserted "it was not the responsibility of [Pennoni] to provide the project jobsite safety means and methods" and that the scope of the work "did not require [Pennoni] to . . . be responsible to observe the work or the jobsite safety." He stated that it was instead the responsibility of the project's contractor and subcontractors to inspect the job site, ensure that pedestrians could not access the site while construction was ongoing, and erect any needed barriers or warnings. He further maintained the contractor and subcontractors were responsible for selecting the concrete used on the site, except that Pennoni specified only its PSI (i.e., pressure) rating.

Echoing what defense counsel had previously represented, the company official certified that Pennoni was "only responsible to be on the job site on 5 occasions during construction," which did not include jobsite safety review; and that he was not "aware of any alleged safety issues" prior to the accident.

Relying on these various representations, plaintiffs went forward with a voluntary dismissal of their claims against Pennoni, through a Stipulation of Dismissal Without Prejudice mutually executed by counsel on July 2 and filed with the court on July 10. In that Stipulation, the parties agreed, in pertinent part, that:

13

1. <u>All defenses raised</u> by Pennoni in its Answers to Plaintiffs' Complaints <u>shall remain in full force and effect</u>, as of the dates such defenses were originally raised by Pennoni <u>including, without limitation any defenses relating to the Affidavit of Merit</u> and/or Applicable Statute of Limitations or Repose;

. . .

3. Plaintiffs' grounds for any attempt to reinstate the Complaint as to Pennoni <u>shall be based solely upon facts discovered on or after June 1, 2019</u> which would conflict with the <u>relevant facts provided in the certification by Pennoni</u> or relevant facts which would make said certification inaccurate regarding Pennoni's scope of work of the project.
[(Emphasis added).]

Pennoni was accordingly dismissed from the case without prejudice. The remaining parties continued actively with discovery, including document exchanges and depositions. That discovery uncovered more details about Pennoni's role in the project, particularly with respect to the design of the stairs on which plaintiff fell.

<u>Plaintiffs' Motion to Reinstate and Pennoni's Cross-Motion to Dismiss</u>

About nine months after the voluntary dismissal, plaintiffs moved in April 2020 to reinstate their claims against Pennoni. In that motion and supporting certification of counsel, plaintiffs asserted that "[s]ince the entry of the Stipulation of Dismissal, discovery has revealed Pennoni's failure to design

14

safety features for the staircase and Pennoni's involvement in the design of those essential safety features for the staircase after [plaintiff's] accident." The motion cited to and attached various responses to interrogatories of multiple co-defendants attesting to the design and engineering services provided by Pennoni, reflecting an alleged lack of safety features in the original engineering designs.

Among other things, the motion to reinstate was supported by documents indicating that: the staircase "was constructed in accordance with the plans and specifications created by Pennoni"; "the work was performed as directed in the Pennoni site drawings"; Pennoni employees answered questions about the "rise and run" of the staircase design; Pennoni's original design of the staircase did not include "handrails" or "stair nosings" for enhanced visibility; and "after the fall, [Pennoni] realized that they needed to differentiate to give you a visual where those stairs were."

The motion exhibits further included a "Pennoni Bulletin" (apparently produced in discovery to another party) from the construction phase, which stated "[l]andscaping is to slope from curb to steps, thus removing the need for railings [on the staircase]."

Plaintiffs also presented post-accident change orders issued by Pennoni in April 2017 authorizing implementation of an amended design. The exhibits

15

further included statements by Longford's company president that the "engineer" (meaning Pennoni) was involved in site inspections and construction safety.

In response to plaintiffs' motion to reinstate, Pennoni filed a cross-motion to dismiss the complaint for failure to file a timely AOM. In that cross-motion, Pennoni emphasized that it had raised AOM non-compliance as a defense in both its original and amended answers.

Furthermore, Pennoni asserted that the purpose of the office director's certification, filed along with the Stipulation of Dismissal, "was to confirm for Plaintiffs' counsel that Pennoni, the design engineer for the project, was not responsible to 'provide the project jobsite safety means and methods.'" Pennoni argued the certification did not "make any representations . . . with respect to Pennoni's design/engineering of the staircase . . . other than to verify that Pennoni did not select the concrete used on the jobsite . . . ." Pennoni also contended that plaintiffs were fully aware before entering into the July 2019 Stipulation of Dismissal that "Pennoni was the professional designer of the subject staircase."

In sum, Pennoni argued there were no new relevant facts to justify reviving plaintiffs' claims, and, additionally, "more than 120 days have now passed" since the filing of Pennoni's answer to plaintiffs' complaint alleging

16

professional negligence, during which time they failed to provide an AOM. Resting on that premise, Pennoni sought to have the motion to reinstate rejected.

In reply, plaintiffs asserted they had no access to Pennoni's design plans or modifications made during the construction phase of the project, and had "absolutely no idea as to why handrails or stair treads were absent" at the time of the accident. They maintained such facts were not made available to them by Pennoni, as requested in discovery, and that the information did not come to light until later discovery responses were filed by other defendants in the case. Plaintiffs alleged the office director's certification was misleading because it was not "a full and accurate representation of Pennoni's involvement in the construction project."

Plaintiffs advised the motion judge they were ready to supply two AOMs against Pennoni—one from a licensed engineer and another from a licensed architect. The affiants each attested that from their review of the file, there is a reasonable probability that Pennoni deviated from applicable standards of care "with regard to the design, layout, documentation and/or construction administration of the renovation of the walkways at [the premises] . . . including the incident stairway."

The Motion Judge's Ruling

17

After hearing oral argument, the trial court granted plaintiffs' motion to reinstate its claims against Pennoni. In the judge's written decision, she noted plaintiffs' contention that they had been misled in the representations about Pennoni's role in the project site, and that discovery obtained from other parties after Pennoni had been let out of the case shed a different light upon the facts.

The judge denied Pennoni's cross-motion to dismiss and its assertion that the AOMs plaintiffs stood ready to tender were unjustifiably late. In her analysis, the judge referred to and adopted the reasoning of several federal decisions, which we shall discuss, infra, in Part II, interpreting New Jersey state law under the AOM statute. Under the logic of those federal cases, as the judge put it, the deadline for "the affidavit of merit does not come into play until the pleadings are [all] settled." Here, the pleadings were not settled because Pennoni had not yet answered the most recent amended complaint, which had added Longford as a co-defendant.

The judge found it significant that "[a]t no point prior to th[e] [S]tipulation [of Dismissal] did Pennoni file an answer to the amended complaint." Moreover, she noted Pennoni "never filed [before its April 2020 cross-motion] a motion to dismiss the complaint for failing to file an affidavit of merit," even though, by the judge's assessment, the AOM had been initially due in March

18

2019, sixty days after Pennoni's original answer. As the judge found, plaintiffs "stand[] ready to serve their [AOMs] on Pennoni, who slept on [its] right to motion this court for dismissal of the complaint under the [AOM] statute."

This Interlocutory Appeal and The Amici

Pennoni moved for leave to appeal, which this court granted on a limited basis. Specifically, our order confined interlocutory review to whether the trial court erred in allowing plaintiffs to serve their AOMs until after Pennoni filed an answer to the amended complaint adding Longford.

We also invited various amici to participate in the appeal to "address the general and unresolved legal question of whether an amendment to a complaint extends the time for the service of an AOM and whether federal case law interpreting the AOM statute on that question of state law should be adopted."[5]

## II.

Because we are confronted with an unsettled question of New Jersey law construing the AOM statute, we review de novo the legal issues posed. Manalapan Realty, L.P. v. Twp. Comm. of Twp. of Manalapan, 140 N.J. 366,

---

[5] We appreciate the thoughtful briefs and participation at oral argument of the amici, who included advocates respectively aligned with plaintiffs' interests and with defendants' interests. The State Bar Association respectfully considered but declined our invitation.

378 (1995); <u>Triarsi v. BSC Group Servs., LLC</u>, 422 N.J. Super. 104, 113 (App.

Div. 2011) (applying de novo review to a legal issue under the AOM statute).

We begin our analysis with the plain text of the AOM statute. In pertinent

part, the statute instructs:

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, <u>the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant</u>, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. <u>The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause</u>.
>
> [N.J.S.A. 2A:53A-27 (emphasis added).]

Our focus is on which pleading acts as the operative pleading for counting the

120-day period set forth in this statute. <u>See</u> <u>R.</u> 1:3-1 ("Computation of Time").

The AOM statute refers to "the answer" of the licensed professional to

"the complaint." It does not refer to the "last answer" or the answer to "the most

recent amended complaint." By its literal wording, the statute contemplates the

AOM will be served promptly, specifically within 60 days of the professional's

20

answer to the original complaint, extendable for another 60 days upon a judicial finding of good cause for such an extension. We are obligated to adhere to this plain language expressed in the statute. State v. Harper, 229 N.J. 228, 237 (2017) (observing that if the law's plain language "clearly reveals the Legislature's intent, the inquiry is over").

This straightforward interpretation of the statute's wording comports with the Legislature's well-known main purposes in enacting the AOM statute. As the Supreme Court has explained, the statute "was designed as a tort reform measure and requires a plaintiff in a malpractice case to make a threshold showing that the claims asserted are meritorious." Galik v. Clara Maass Med. Ctr.,167 N.J. 341, 350 (2001). "It is designed to weed out frivolous lawsuits at an early stage and to allow meritorious cases to go forward." Ibid. (emphasis added).

Waiting until the very end of the pleadings stage for an AOM means that, in the interim, the licensed professional will have a possibly meritless lawsuit hanging over its head. During that often-protracted time frame it may have its malpractice insurance premiums raised or have to expend substantial funds on counsel fees out of its policy deductible for participating in the litigation. This is especially of concern in a construction accident case, in which months of

21

discovery typically occur before all subcontractors and other potentially liable parties are identified and the pleadings are repeatedly amended on an ongoing basis. The public policies that underlie the AOM statute call for prompt verification that the malpractice claims have been deemed by an expert in the field to have merit.

We reject plaintiffs' argument that the terms "complaint" and "answer" within N.J.S.A. 2A:53A-27 must refer to the last-filed complaint and last-filed answer because amended pleadings generally displace the pleadings that preceded them. Although we recognize the general proposition of displacement, see Rule 4:5B-4, the most sensible reading of the AOM statute is that the 120-day outer deadline ordinarily should be unaffected by revised pleadings that add other parties and claims to the lawsuit.

For example, here the amendment of plaintiffs' complaint to add as another defendant the landscaping company, Longford, logically has no obvious bearing upon whether there is a reasonable basis to claim that Pennoni itself violated its own professional standards of care. The trial court erred in focusing on the fact that Pennoni's answer to the amended complaint adding Longford had not yet been filed.

We recognize the 120-day outer deadline can be affected by amendments to a complaint that fundamentally alter an AOM affiant's evaluation of whether the licensed professional deviated from standards of care. For example, suppose the original complaint only alleged Pennoni had served as an architect on the project and had provided faulty architectural plans, but then was later amended to insert claims that Pennoni had also acted as an engineer and violated professional standards of engineering. In that scenario, an AOM from an engineer would not be due until after the complaint was amended in that manner and a corresponding amended answer was filed. Otherwise, a series of ongoing amendments to the pleadings generally should not affect the AOM deadline for each licensed professional that is sued unless a special interdependency is shown.

Ideally, the defendant-specific deadlines for each licensed professional named in the lawsuit should be spelled out in a case management order, following what is known as a "Ferreira[6] conference." Even so, the lack or cancellation of such a Ferreira conference provides no legal justification for an untimely AOM. Paragon Contractors, Inc. v. Peachtree Condo. Ass'n, 202 N.J.

---

[6] Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144 (2003).

415, 424 (2010) ("At issue here is what effect the failure to hold a <u>Ferreira</u> conference will have on the time limits prescribed in the statute. The answer is none."). Hence, in the present case, we do not hinge our analysis on the lack of a <u>Ferreira</u> conference.

Also, if a plaintiff should need more time to procure an AOM because it is waiting for the licensed professional to supply documents or other discovery vital for its proposed expert to review, the plaintiff can file a motion for relief based on that demonstrated need. See <u>Fink v. Thompson</u>, 167 N.J. 551, 564 (2001) ("We urge counsel to time their discovery – with court intervention if necessary – so that facts necessary to comply with N.J.S.A. 2A:53A-27 are available by the statutory deadlines.").

<u>The Federal Cases</u>

The federal cases cited by plaintiffs[7] do not persuade us to adopt a contrary interpretation of the AOM statute. Several of those cases arose in peculiar or exceptional settings. We briefly discuss the cases here.

---

[7] The cases are <u>Snyder v. Pascack Valley Hosp.</u>, 303 F.3d 271 (3d Cir. 2002); <u>Costa v. Cnty of Burlington</u>, 566 F. Supp. 2d 360 (D.N.J. 2008); <u>Szemple v. Univ. of Med. & Dentistry of N.J.</u>, 162 F. Supp. 3d 423 (D.N.J. 2016); and <u>Endl v. New Jersey</u>, 5 F. Supp. 3d 689 (D.N.J. 2014).

First, in Snyder, the Third Circuit Court of Appeals dealt with an unusual situation in which the district court clerk's office refused to allow a plaintiff to file a pleading that affected the AOM timetable and then allowed an answer to an amended pleading to be filed prematurely. Snyder, 566 F. 3d 271.

The facts in Snyder involved a medical malpractice suit in which the plaintiff brought a wrongful death action after her husband died of a pulmonary embolism. Id. at 272-73. The husband's death occurred after becoming ill during a business trip on February 11, 1999, in New Jersey, where the defendant doctor incorrectly diagnosed him and released him the same day. Two days later, the husband entered another hospital where he was correctly diagnosed with a pulmonary embolism and succumbed to that illness the next day. Ibid. In September of that year, plaintiff's counsel obtained an expert opinion that there had been a deviation from acceptable standards in his treatment by the defendant doctor. Ibid. Following this, in May 2000, plaintiff filed a wrongful death action alleging medical malpractice. The parties exchanged pleadings, and the hospital eventually moved to dismiss the claims against it for failure to file an AOM.

The district court ruled in Snyder that the original answers were the operative pleadings for calculating the AOM statute's time limit and dismissed

the claim.  Ibid.  The district court used that trigger date for the AOM timetable rather than the hospital's subsequent answer to a second amended complaint.

The Third Circuit reversed.  Id. at 272.  The court determined that, under its view of New Jersey law, "the time limit [for the AOM] began to run on the date that defendant filed his answer to the second amended complaint and, therefore, was timely."  Ibid.  The court reasoned that an "amended complaint supersedes the original version in providing the blueprint" for the case.  Id. at 276.

In reaching that result in Snyder, however, the Third Circuit spotlighted the unusual procedural features of the case:

> First, in his opinion dismissing the case, the district judge determined that the Clerk's Office erred in failing to accept the second amended complaint when it was presented on June 29, 2000. Not until August 25, 2000, some two months later, did the Court enter a Consent Order permitting the second amended complaint to be filed and that was not accomplished until September 5, 2000.
>
> Second, the parties had attended a status conference before a magistrate judge on August 9, 2000.  All defendants had copies of the proposed second amended complaint at that time.  Counsel for the Hospital made it clear that he would file an answer to the second amended complaint, rather than the first amended complaint.  He did so one week later, on August 16, 2000, before the magistrate judge had

26

signed the Consent Order for the filing of the second amended complaint. <u>Thus, the Clerk's Office erred again in accepting an answer before the complaint to which it responded was filed</u>.

Unquestionably, <u>the errors of the District Court Clerk affected the orderly progress of the litigation</u>. <u>The confusion generated by these mistakes should not affect the plaintiff's right</u> to proceed on a claim that on its face appears meritorious.

[<u>Id.</u> at 275-76 (emphasis added).]

Given this peculiar chronology, the Circuit Court concluded that it was unfair to the plaintiff to disallow the AOM she tendered after the hospital's answer was filed to the second amended complaint.

In <u>Costa</u>, the district court dismissed defendant's motion to dismiss for failure to file a timely affidavit of merit pursuant to N.J.S.A. 2A:53A-27 as untimely. In that case, the plaintiff filed a wrongful death action alleging medical malpractice after the decedent, an inmate at a corrections facility, contracted and died from an infection while incarcerated. <u>Costa</u>, 566 F. Supp. 2d at 361.

There, plaintiff filed an initial complaint on February 26, 2007, and an initial AOM on March 20, 2007. <u>Id.</u> at 361. The defendant moved to dismiss on April 7, 2008, alleging that the doctor who rendered the AOM was not

27

qualified to do so, and that it was too late for the plaintiff to obtain a replacement AOM because more than 60 days had run from the defendant's initial answer. Id. at 362.

Relying on the Third Circuit's approach in Snyder, the district court in Costa denied the motion to dismiss. The court reasoned that the defendant's answer to the second amended complaint was the operative trigger date for the AOM timetable, and that plaintiff therefore had 120 days from that later date to file an appropriate AOM. Id. at 362-63.

Further, in Endl, the district court considered AOM timeliness issues in a case alleging that the decedent, a State prison inmate, had passed away due in part to the defendants' medical malpractice. Endl, 5 F. Supp. 3d at 692-93. The court denied the defendants' motion to dismiss for failure to file a timely AOM. Id. at 705-06.

Although the individual medical defendants in Endl did file an answer to the plaintiffs' first amended complaint, the court reasoned that the pleading was not operative for the AOM timetable. Because the case "did not go forward based on the [first amended complaint], the screening function of the Affidavit of Merit was not implicated with respect to" the first amended complaint. Id. at 705-06. The court reasoned that because the defendants had not answered the

second amended complaint but instead had moved to dismiss it, the time limits of the AOM statute were not triggered.  Id. at 706.

Finally, in Szemple, 162 F. Supp. 3d at 428-29, the district court applied similar reasoning in concluding that an AOM was not untimely.  The case concerned a dental malpractice claim involving a prison dentist who performed an extraction at the prison's medical clinic and caused major injuries to an inmate.  The defendants moved to dismiss the claim, which the court converted into a motion for summary judgment, alleging that the plaintiff had not served a timely and proper AOM.  Id. at 425.

The defendants argued that the plaintiff's AOM was inadequate, based upon an unqualified person having issued it, and because it was inadequate that the plaintiff failed to file a timely affidavit within the 60-day or maximum 120-day period allowed by statute.  Id. at 429-30.  The defendants had filed four amended answers to the first amended complaint, with the second (the first operative as to the specific defendant at issue) being filed on July 17, 2014, and the fourth on August 15, 2014.  The plaintiff filed his AOM on November 5, 2014, which was also before the fifth amended answer was filed on January 19, 2016.  Id. at 430.

29

In determining that the AOM in <u>Szemple</u> was timely, the district court first reasoned that although the plaintiff had not filed a motion to extend the statutory time limit from 60 to 120 days, there existed "good cause" to do so. <u>Id.</u> at 429. Moreover, in calculating the 120-day maximum period, the court ruled that the operative pleading was the fourth amended answer. The court cited in this regard to both <u>Snyder</u> and <u>Costa</u> as indicative of a "liberal spirit of the case law" and supportive of the notion that the AOM clock should run from the final operative answer to the complaint. <u>Id.</u> at 430. The court observed that such a wait-until-the-very-last-pleading approach would eliminate uncertainty and duplication of effort. <u>Ibid.</u>

However, in making this determination, the district judge in <u>Szemple</u> also acknowledged that "[i]n the end [] the correctness or not of my interpretation [of the AOM statute] is not critical. The very first answer filed on behalf of [defendant] . . . , was filed on July 17, 2014. Even counting from that date, the 120 day deadline would have expired on November 14, 2014." <u>Id.</u> at 431. The court accordingly denied the defense motion for dismissal on the grounds of an untimely AOM. <u>Ibid.</u>

With all due respect to our fellow judges on the federal bench, we decline to adopt the expansive approach of these four cases. Our own experience in this

A-0179-20

state court is that the objectives of the AOM statute and the efficient processing of professional negligence cases—which are litigated more frequently in state court than in federal court with limited diversity jurisdiction over state tort actions—is better served by treating a defendant's answer to the original complaint as the presumptive start to the 60-day/120-day AOM timetable, subject to recognized exceptions that we now discuss.

Substantial Compliance or Extraordinary Circumstances

Our New Jersey case law has recognized that the AOM statute, despite its salutary objectives as an initial screening mechanism, should not be enforced so rigidly that it becomes "a minefield of hyper-technicalities [that] doom innocent litigants possessing meritorious claims." Ferreira, 178 N.J. at 151 (quoting Mayfield v. Cmty. Med. Assocs., P.A., 335 N.J. Super. 198, 209 (App. Div. 2000)). The Supreme Court has identified two important exceptions where an AOM is required,[8] that may be established to prevent excessive and unjust dismissals.

---

[8] The AOM will be unnecessary if the plaintiff's claims against the licensed professional are founded upon common knowledge, vicarious liability, or other legal theories that do not implicate the defendant's professional standards of care. See e.g., Hubbard v. Reed, 168 N.J. 387, 390 (2001) (liability based on common knowledge); Haviland v. Lourdes Med. Ctr. of Burlington Cnty., Inc.,

First, the Court has recognized that the 120-day outer deadline may be relaxed in some situations where a plaintiff has demonstrated "substantial compliance" with the AOM statute by, say, inadvertently serving an unsigned affidavit or transmitting it to the wrong recipient. See, e.g., Galik, 167 N.J. at 351-58. This equitable doctrine calls for an examination of whether the plaintiff has shown "a lack of prejudice to the defending party; a series of steps taken to comply with the [AOM] statute; general adherence to the purposes of the statute; reasonable notice of the claim; and a reasonable expectation of why there was not strict compliance." Id. at 357.

Second, the lack of a timely AOM may be excused in narrow situations in which a plaintiff demonstrates "extraordinary circumstances" for the untimeliness. See, e.g., A.T. v. Cohen, 231 N.J. 337, 340-50 (2017) (in which an "almost perfect storm" of events, including the delayed receipt of records from the defendant, comprised extraordinary circumstances that justified the late submission of an AOM); Barreiro v. Morais, 318 N.J. Super. 461, 464-69 (App. Div. 1999) (in which extraordinary circumstances were shown by the

_ N.J. Super. _ (App. Div. 2021) (holding no AOM was necessary where the plaintiff sued an employer on a theory of vicarious liability for negligent conduct by an employee who was not a licensed professional within the scope of N.J.S.A. 2A:53A-27).

defendant's uncooperative failure to provide a plaintiff with requested discovery that would have enabled the plaintiff's expert to evaluate the matter and issue an AOM).

<u>The Extraordinary Circumstances Exception Applies Here</u>

At issue before us is the concept of extraordinary circumstances. We conclude such circumstances exist here.[9]

As the motion judge rightly pointed out, defendants did not move to dismiss the complaint with prejudice once 120 days had elapsed from the filing of defendants' original answer in January 2019 or, for that matter, their amended answer in February 2019. Depending on which starting date is used, plaintiffs' AOM would have been due, assuming a 60-day extension to 120 days, either by May 21, 2019 or, at the outside, June 8, 2019. The Stipulation of Dismissal was not filed until July 10, 2019. During the interim, as the motion judge noted, counsel were mutually focused on cooperatively negotiating a voluntary dismissal of the complaint. Plaintiffs' counsel expressly raised urgent concerns in his April 2 email to Pennoni's counsel that his AOM appeared to be due that

---

[9] Because of our determination of extraordinary circumstances, we need not rest or comment upon the somewhat allied concepts of estoppel and laches asserted in the briefs of plaintiffs and amicus New Jersey Association for Justice.

Friday, three days ahead, and received in response an assurance from his adversary that Pennoni would consent to an extension totaling 120 days from the date of the original answer. The documents supplied in the record do not reflect any further written communications between counsel on the subject.

Defendants emphasize that the language of the negotiated Stipulation preserved Pennoni's defenses to the claims, including explicitly a defense based on failure to serve a timely AOM. The trial court did not deem that language to be dispositive and neither do we. By the time the Stipulation was signed and filed with the court in July, the 120-day outer deadline had already passed. Yet Pennoni took no action and apparently voiced no assertion to plaintiffs then about the expiration of time.

An important element of the Stipulation, which is manifest from the exchange of emails, is that plaintiffs would retain the right to move to reinstate their claims against Pennoni (albeit on conditions) if further discovery revealed Pennoni in fact had responsibility for the unsafe condition of the premises. That right to seek reinstatement would have been illusory if defendants already possessed a case-dispositive, "slam dunk" basis to declare that plaintiffs were too late to serve an AOM and powerless to remedy the omission.

34

It also must be noted that, even while the negotiations over the Stipulation were ongoing, plaintiffs' counsel was pressing to obtain documents from Pennoni, with only moderate success. Furthermore, the certification of non-involvement tendered by Pennoni's company official, while perhaps accurate for what it stated, might have reasonably caused plaintiffs to misunderstand the firm's actual involvement with the project.

To show extraordinary circumstances, it is unnecessary to establish that an opponent acted in bad faith or deliberately misled a plaintiff. We emphasize that we absolutely make no such determination here. What appears to have occurred from the record is that between March 2019 and July 2019 counsel for both sides were focused—to their mutual credit—on trying to settle their clients' differences and resolve the claims through a Stipulation of Dismissal that could have saved both sides additional litigation expenses.

Once it came to light months later that Pennoni had designed the allegedly-dangerous stairs and could have deviated from related standards of care, plaintiffs were readily prepared to supply—and did supply—the necessary AOMs. The trial court did not misapply the statute or the applicable law by declining to dismiss their revived claims.

In sum, although we do not endorse the federal cases that partially guided the trial court, we affirm the court's grant of plaintiffs' reinstatement motion and its denial of Pennoni's cross-motion for dismissal. See State v. Armour, 446 N.J. Super. 295, 310 (App. Div. 2016) (an appellate court may affirm judgment or order on different grounds than set forth below).

Affirmed. The interlocutory appeal is concluded and the matter is remanded for further proceedings.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

36

A-0179-20